MaddeN, Judge,
delivered the opinion of the court:
The plaintiff corporation was formed in July 1940, at the request of the Navy Department, to acquire and operate a shipyard in Philadelphia which had not been operated since 1927. During the years 1941 to 1946 it did $275,000,000 worth of work for the Navy, under twelve separate cost-plus-fixed-fee contracts for the construction and conversion of naval vessels. In 1946, after all its contracts had been completed, or terminated for the convenience of the Government, it discontinued shipyard operations.
The plaintiff’s first claim is for sums of money which, it asserts, were a part of the costs of performance of eight of its contracts, and should therefore have been reimbursed to it by the Government. The expenditures in question were for legal and accounting fees, directors’ fees and expenses, salaries and expenses of its public relations personnel, dues to business associations and subscriptions to business magazines, and charitable contributions.
The Navy’s Bureau of Supplies and Accounts, as the authorized representative of the Navy Department, approved the items here in question as being ordinary and necessary business expenses incident to the performance of the contracts, and the Navy paid them to the plaintiff as a part of its costs. The General Accounting Office, upon its audit of the accounts of the Navy disbursing officers, took exception to the payments, not on the ground that the amount of any *93 item was unreasonable or excessive, but only on the ground that any expenditures of these types were not reimbursable costs. Thereupon, and only because of the action of the General Accounting Office, the Navy Department collected these items back from the plaintiff.
The plaintiff argues that the action of the Navy Department in allowing these items as reimbursable costs was (1) final and (2) right. The Government does not really contest this claim. It merely submits it for the determination of the court. That being so, we will deal briefly with it. The expenditures in question were, it seems to us, in most cases indispensable to the operation of the plainti ff’s shipyard. To do $275,000,000 worth of business in five years without legal counsel or accounting assistance would have been reckless. A corporation must have directors, and it is not improper to pay them fees and expenses. The expenditures for the maintenance of good public relations, including labor relations, in an enterprise of that magnitude during a time of labor shortage, was good management. The small item for dues and subscriptions, and the larger one for contributions to the United Charities Campaign, the United War Chest, and the American Eed Cross could hardly have been avoided except at a sacrifice of good public relations. The reimbursa-bility of the charitable contributions was expressly provided for in T. D. 5000, and in the “Explanation of Principles’* which were incorporated into the contracts by reference, as will appear hereinafter. That the plaintiff had no ulterior motive such as advertising or laying the basis for future business in any of these expenditures is shown by the fact that as soon as its Navy contracts were completed or terminated, it went out of business.
Our conclusion, on this claim, is that the items in question were reimbursable costs and that the plaintiff is entitled to recover $76,913.49.
The plaintiff’s second claim is that it was entitled to, but denied the right to, retain discounts, not in excess of one percent, which it obtained from suppliers by paying cash for supplies. This question arises in regard to three contracts, NObs — 100, NObs — 173, and NObs-206. In the first of these contracts, Treasury Decision 5000 which was printed in the *94 Federal Eegister August 6,1940, is referred to in paragraph ■(d) of Article 9, as follows:
(d) For the purpose of determining the amount payable under the contract, costs will be determined by the Bureau of Supplies and Accounts in accordance with the procedure in Treasury Department Regulations T. D. 5000 insofar as applicable, and insofar as not applicable, in accordance with sound accounting practice.
Turning to T. D. 5000, entitled Cost and Profit Regulations, we find in Sec. 26.9 (g) (4), the following:
Among other items which shall not be included as a part of the cost of performing a contract or subcontract or considered in determining such cost, are the following: * * * cash discount earned up to one percent of the amount of the purchase,. * * *;
In contracts Nos. NObs-173 and NObs-206, “Explanation of Principles for Determination of Costs Under Government Contracts” is referred to. This document bears no specific date of issue. It was printed by the Government Printing ■Office in April, 1942. In each of these contracts, paragraph .(b) of Article 6 said:
(b) Allowable cost shall constitute the cost incurred by the Contractor in the performance of the contract and accepted by the Bureau of Supplies and Accounts as chargeable in accordance with “Explanation of Principles for Determination of Costs Under Government Contracts, War Department-Navy Department” April 1942, printed by the United States Government Printing Office.
In the Explanation of Principles, paragraph 9 said:
Charges for material should be net, after deducting cash discounts in excess of 1 percent * * *.
Paragraph 44 said:
44. The cost of materials, parts, and supplies should be limited to their net cost after deduction of benefits of any kind arising from such purchases received by, or on behalf of the contractor, including any benefits which were available to him but were not obtained by him, excepting only when he has been prevented from obtaining them by the fault or delay of the Government. The benefits herein referred to include:
*95 (a) All trade discounts, rebates, allowances, credits, commissions, refunds, bonuses, etc., arising from purchases of materials, parts, and supplies.
(b) Cash discounts on such purchases in excess of 1 percent and all cash discounts accruing to prime contractors on subcontracts.
The plaintiff urges that the quoted portion of T. D. 5000 and the Explanation of Principles allowed it to keep for itself any cash discount not in excess of one percent, and be reimbursed by the Government as if it had not made that saving. The language is inept, but the Government’s own officers so interpreted it. A manual issued by the Compensation Board of the Navy on August 15,1940, provided as follows:
Section I. Mateeial Audit. 3. * * * (i) The Navy is entitled to cash discounts in excess of one percent in accordance with the latest regulations, which provide that trade or other discounts granted by a contracting party in receipt of a contract or sub-contract performed by such party are also to be deducted in determining the true total contract price of such contract or sub-contract.
The fiscal officers of the Navy allowed the plaintiff to retain cash discounts up to one percent from the beginning of performance of its first contract on October 29, 1940, until September 18, 1942, at which time the plaintiff was advised that under a new interpretation of T. D. 5000 such retention would no longer be permitted. Thereafter the plaintiff was required to pay over to the Government the cash discounts which it had been allowed to keep during the period from October 29,1940, to September 18, 1942.
The plaintiff appealed to the Secretary of the Navy. The Secretary referred the appeal to the Navy Board of Contract Appeals for a recommendation and an advisory opinion. That Board agreed with the plaintiff as to Contract NObs-100, but concluded that as to Contracts NObs-173 and NObs-206 the appeals were not timely. We discuss hereinafter the question of timeliness.
The Secretary of the Navy, on October 11, 1945, adopted the findings of fact of the Board but disapproved of its recommendations with respect to Contract NObs-100, on which the *96 Board bad recommended a decision for the plaintiff on the merits. Thus all of the plaintiff’s appeals failed.
What seems to have happened was this. The Vinson-Trammel Parity Act of March 27,1934, 34 U. S. C. 496, put a limitation on the profits which a contractor might make in building ships for the Government, even under a fixed-price contract. The Act of June 28,1940, 50 TJ. S. C. App. 11526, contained similar provisions. T. D. 5000 was issued on July 29, 1940. It was apparently thought that since contractors had to find the money to finance their contracts, and could not count interest on borrowed money as costs, to determine whether they had made excess profits, the privilege of retaining cash discounts up to one percent would tend to offset the hardship. By the Act of October 8,1940,34 TJ. S. C. 496a, the two acts cited above were suspended. The Government began to award cost-plus-fixed-fee contracts. On December 9, 1941, Navy cost inspectors were directed to make prompt reimbursement of expenditures, before audit, on such contracts. The plaintiff’s contract NObs-100 was made December 24, 1941. In April 1942 the Explanation of Principles, discussed above, was promulgated. On April 9, 1942, the plaintiff’s Contract NObs-173, and on June 1,1942, its Contract NObs-206, were made. On September 18, 1942, the Navy concluded that the hardship which the discount provision of T. D. 5000 was designed to offset no longer existed, since cost-plus-fixed-fee contractors were being reimbursed their costs promptly.
The Navy therefore reversed its “interpretation” of T. D. 5000, and of the Explanation of Principles which had merely followed T. D. 5000. That this was the reason for the reversal is further indicated by the fact that contractors were still allowed to retain cash discounts up to one percent on supplies purchased for inventory rather than for direct use in the ship that was being built. In the case of the inventory supplies, the contractor would still have his money tied up until he had use for the supplies.
The question, on the merits, is, then, whether a provision written into an administrative regulation, and from the regulation incorporated into a contract by reference, can be eliminated from the contract by one of the parties to it, by *97 changing its interpretation of the regulation. Law may change as the circumstances and the need for it change. But a contract can hardly mean one thing today and another tomorrow, by any process of interpretation in the light of circumstances. Indeed there was no change of circumstances in the instant case, since all three of the contracts were made after the Navy had initiated its policy of prompt payments to contractors. There was only an attempt by the Navy to eliminate from the contracts, unilaterally, provisions which were of substantial importance to the plaintiff, the other party to the contract.
Our conclusion is that, on the merits, the plaintiff is entitled to recover on its second claim. We now consider whether there is, in the history of the administrative steps taken, or omitted, anything which prevents us from deciding this claim on its merits. When the plaintiff was denied the right to retain its cash discounts up to one percent, it appealed to the Secretary of the Navy who referred the question to the Navy Department Board of Contract Appeals for its report and recommendation. The Board reported the facts, and recommended that the plaintiff’s appeal be sustained as to Contract NObs-lOO. The Secretary adopted the Board’s findings of fact, but refused to make the decision on the merits which the Board recommended. Instead, he dismissed the appeal. Contract NObs-100 provided that disputes in respect to the determination of costs should be decided by the Navy Department Board of Contract Appeals (the successor to the Compensation Board); that the contractor might obtain review of the decisions of the Board upon written request made within thirty days after the date thereof; and that any determination of the Secretary should be conclusive as to all matters of fact involved therein. The question of the retention of discounts up to one percent was not a “matter of fact” within the meaning of the language of Government contracts. It was a question of the interpretation of a written document, commonly called a “question of law.” See Martin Wunderlich v. United States, 117 C. Cls. 92, 212, reversed on other grounds 342 U. S. 98; McWilliams Dredging Co. v. United States, 118 C. Cls. 1, 16, for *98 discussion and citations. The Secretary’s decision was, therefore, not final as to Contract NObs-lOO.
Contract NObs-206 said:
All disputes concerning questions of fact arising under this contract shall be decided by the Chief of the Bureau of Ships, subject to written appeal by the contractor within 30 days to the Secretary of the Navy or his duly authorized representatives whose decision will be final and conclusive upon the parties hereto.
Tiie Navy Board of Contract Appeals, to whom the Secretary referred the plaintiff’s appeal on this contract, recognized that the dispute involved a “question of law” not covered by the disputes provision of the contract. However, tiie Secretary had, after all the plaintiff’s contracts here involved were made, by letter instructed his subordinates that in disputes relating to the allowance of costs “the decision of the Chief of the Bureau of Supplies and Accounts (Cost Inspection Division) with respect to such disputes shall be final and conclusive, subject to appeal by the contractor within 30 days to the Secretary of the Navy or his duly authorized representative.” The Board, pursuant to this instruction, dismissed the plaintiff’s appeal because it had not been filed within the 30 days specified in the Secretary’s letter of instructions. The plaintiff was not bound by the decision of the Chief of the Bureau of Supplies and Accounts and lost nothing by failing to appeal within 30 days. As we have shown above, the dispute did not concern a “question of fact.” The contract did not, therefore, provide for any finality, nor any appeal. The fact that the plaintiff did appeal to the •Secretary, who as the superior officer of those who had denied the plaintiff’s claim, could have overruled them and given the plaintiff relief, did not change this natural and human action on the plaintiff’s part into a consent to a modification of the contract to accord finality to administrative action, finality not stipulated in the contract. And the Secretary’s letter of instruction to his staff, apparently unknown to the plaintiff and certainly not agreed to by it, had no effect whatever upon the plaintiff’s right to litigate its dispute concerning questions not “of fact.”
Contract NObs-TT3 provided:
*99 all disputes arising under the contract * * * shall be determined by the Secretary of the Navy, such determination to be final and conclusive as to all questions of fact involved therein. No such determination will be made by the Secretary of the Navy except upon written request therefor submitted to the Chief of the Bureau of Ships within six months after the date of expiration of the guarantee period under the contract.
The plaintiff's appeal was not filed within six months after the specified date. The. Navy Board of Contract Appeals recommended that the appeal be dismissed as too late, and the Secretary dismissed it.
We have, then, as to Contract NObs-173 a situation where the Secretary’s decision, if made on the merits, would not have been final because it would not have concerned a question of fact. We know from the Secretary’s action on the merits of cases involving the identical question, between the same parties, at the same time, what his decision would have been if the appeal had been timely filed. Our question is whether the plaintiff has lost a.good claim by failing to take a procedural step which, if it had been taken, would have been futile. The plaintiff urges that a contractor with the Government is not prejudiced by his failure to take a vain appeal, citing United States v. Smith, 256 U. S. 11. In United States v. Blair, 321 U. S. 730, 736, the Supreme Court recognized this doctrine but held that it was not applicable because there was, in. that case, no basis for predicting what the decision of the Head of the Department would have been. Here, unless we are to assume completely erratic conduct on the part of the Secretary, which we have no reason to do, we know tó a certainty that he would have dismissed this appeal on the merits, if he had considered it on the merits. If he had dismissed it on the merits, the plaintiff would have been free, under the disputes article of the contract, to litigate it here. We think the plaintiff has not lost its right by the late filing of an appeal that, whenever filed, would have been in vain.
The plaintiff is entitled to recover $138,507.56.
It is so ordered.
Littleton, Judge, concurs.