**ALLIED CONTRACTORS, Inc.,**
v.
**The UNITED STATES.**
No. 49929.

United States Court of Claims.
Oct. 5, 1954.

Horace S. Whitman, Washington, D. C., for plaintiff.

Thomas H. McGrail, Washington, D. C., with whom was Warren E. Burger, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

LITTLETON, Judge.

The plaintiff sues to recover $3,006 as damages for an alleged breach of contract by defendant. On June 15, 1948, plaintiff entered into a construction contract with the Navy Department whereby plaintiff was to furnish the materials, labor and equipment necessary to perform the work of erecting antenna poles and transmission wire poles; to construct access roads, and perform certain miscellaneous work at the Navy Communication Station, Annapolis, Maryland. The work was to be completed, as originally specified, on or before October 13, 1948.

The relevant portions of the contract specifications provide:

"2–01. *General requirements.*— The erection of antenna support and transmission line poles shall be accomplished in the groups as hereinafter set forth and shall be governed by the restrictions as hereinafter specified.

"2–02. *Restrictions.*—* * * Poles specified or indicated to be erected or removed shall in no case be stored at the site of the erection or removal, but shall be immediately erected or removed from the site. Poles specified to be disposed of shall be (a) stored at the site of the culvert, where directed, for use as piles; (b) stored on the reservation, where directed, for cutting into short lengths for deadmen; or (c) removed from the reservation.

"2–03. *Sequence of construction.* —The erection and removal of antenna and transmission line poles shall be accomplished in three groups as directed. The three groups are as follows:

"Group A.

1. * * *

2. (a) Existing antenna wires to be removed by the Government.

(b) Remove 4 long poles for disposal.

(c) Remove 3 short poles.

(d) Erect 5 antenna support poles, approximately 90 feet long.

(e) Set 2 deadmen.

(f) Antenna then to be installed by the Government.

3. (a) Existing antenna wires to be removed by the Government.[1]

"2–04. *The procedure for erection* of antenna supports and transmission line poles will be determined by the Government in a manner to cause the least possible interference with the operation of the Navy Communication Station. * * *"

The specifications required the defendant to first remove the existing antenna wires. Following this the plaintiff was to remove the old poles either for re-erection, disposal, or for use as piles for the culvert in connection with the road work. Then plaintiff was to erect the new poles and set the deadmen. Following this work the defendant was then to install the antenna wire on the new poles. The defendant concedes, and the evidence clearly shows, that defendant did not follow the sequence of work as set forth in the specifications in that defendant failed to promptly remove the wire from the old poles. This delayed and disrupted the orderly progress of plaintiff's work, resulting in delay and expense to plaintiff. The plaintiff was prevented from immediately removing the old poles and was required to move its heavy equipment to another pole and later return to remove the old pole. Also, some of the old poles were designated by defendant for use as piles in the construction of the culvert under part of the road. The plaintiff, obviously, could not remove or use the designated poles for piles until defendant had removed the wire.

The defendant's failure to promptly remove the wires in the sequence expressly required by the contract specifications delayed the culvert and road work beyond the original completion date of the contract and threw the work into the winter months. In early November plaintiff was authorized to purchase the poles needed for piles rather than wait until the wires were removed by defendant from the old poles. The plaintiff purchased the poles and proceeded with the road work.

On January 28, 1949, plaintiff was ordered to suspend work because of inclement weather. On March 24, 1949, plaintiff was ordered to resume work and the contract was completed in May 1949, within the contract time, as extended.

The plaintiff rented a caterpillar and roller to perform the road work. The roller, which was idle from December 1, 1948, to April, 1949, cost plaintiff $335 per month or $1,340 for the idle time. The caterpillar, which was idle from December 1, 1948 to February 1, 1949, cost plaintiff $583 per month or $1,166 for the idle time. The plaintiff did not return this equipment to the owner from whom it had been rented during the work stoppage, due to the impossibility of anticipating the duration of such stoppage, and due further to the fact that such equipment was difficult to obtain on short notice, especially during the spring.

The plaintiff requested payment by defendant for the extra costs incurred by reason of defendant's failure to follow the sequence of work set forth in the specifications, in the performance of the work required of defendant by the contract. The plaintiff's request for $1,790 for extra cost on the antenna work is itemized in finding 15. The plaintiff's request for $2,406 was for the rental for the idle time of the caterpillar and roller, due to the failure of defendant to perform its part of the work under the contract, as it should and could have done within a reasonable time.[2]

The defendant paid plaintiff the $1,790 requested for the antenna work by change order "C" dated June 21, 1949, which said in part: "Owing to the following change in the work, namely, revision in plans and procedure of construction by the Government, the contract price, in accordance with Article 10 of the contract, is hereby increased by $1,790.00 * * *." The second item

---

1. See finding 6 for entire sequence.

2. This figure should have been $2,506, but due to a mathematical error by plaintiff the total was stated as $2,406. See finding 15.

of extra costs of $2,506, the one for which plaintiff now seeks recovery, was denied by letter dated June 27, 1949, "on the grounds that it is in the nature of damages and therefore not compensable [administratively] under the contract." Both claims were founded on defendant's failure to follow the sequence of work expressly set forth and called for in the specifications. Upon plaintiff's further request for payment it was subsequently denied again by a letter dated August 26, 1949, which stated:

"In response to your oral inquiry, you are advised that report from the Public Works Office at the Naval Academy does not indicate that the Government so modified your procedures under the subject contract as to cause additional costs and entitle you to additional compensation.

"Accordingly, there would appear to be no basis for reversing the Bureau's decision denying your claim for $2,406 which was communicated to you by the Officer in Charge of Construction on 27 June 1949.

"This is a final decision of the Contracting Officer under Article 16 of the contract."

The plaintiff did not appeal this decision of the contracting officer.

■ It is clearly apparent from the evidence that defendant breached the contract. In section 2–03 of the contract specifications defendant agreed to remove the wire from the old poles before plaintiff erected the new poles so that plaintiff could remove the old ones at the same time it erected the new ones and use the designated poles as piles in construction of the culvert. This defendant failed to do. The defendant did not issue a change order under article 10 amending the specifications and make an equitable adjustment therefor. Change order "C" relating to item II of plaintiff's claim came only after the work had been completed. The defendant's breach of contract directly caused plaintiff to incur additional expense not only in moving its equipment about with the result-

ing delays for which defendant paid $1,-790 under change order "C" on item II of the claim, but also prevented the completion of the culvert and road work before the winter months, which resulted in plaintiff's additional expense of $2,-506 (findings 7–20). The evidence shows that under the circumstances plaintiff diligently prosecuted the work and would have completed the road work before the winter months had defendant followed the sequence of work set forth in the specifications, in the performance of the work required of it. The $2,506 rental cost of the idle equipment was a direct result of defendant's breach of the contract and defendant is liable therefor. George A. Fuller Co. v. United States, 69 F.Supp. 409, 108 Ct.Cl. 70 and the cases cited therein; Line Construction Co. v. United States, 109 Ct.Cl. 154; Anthony P. Miller, Inc., v. United States, 77 F.Supp. 209, 111 Ct.Cl. 252; Rafael Torres, Jr. v. United States, 126 Ct.Cl. 76. There was no evidence to support the reasons asserted by the contracting officer in the first paragraph of the letter of August 26, 1949. Act of May 11, 1954, 68 Stat. 81, 41 U.S.C.A. §§ 321, 322.

The defendant's contention that section 2–04 of the specifications permitted a change in sequence of the work set out in section 2–03 is not supported by the evidence and is, therefore, without merit. Section 2–04 allowed defendant to determine which group should be done first, second, etc., and which poles were to be removed first, second, etc., so as to cause the least interference with the communication operations, but certainly this section did not allow defendant to ignore the sequence of the work to be done with respect to each pole, which was clearly specified in section 2–03.

■ The defendant's other contention is that plaintiff did not exhaust his administrative remedies since it failed to appeal from the contracting officer's denial of its claim, and that that decision is final and binding under United States v. Blair, 321 U.S. 730, 64 S.Ct. 820, 88 L.Ed. 1039. Under the facts in this case

we do not agree. The contracting officer, or his duly authorized representative, admitted a change in the plans and procedure of construction and by change order "C" dated June 21, 1949, paid plaintiff $1,790 as part of the extra expense incurred by reason of such change. Plaintiff's protests were adequate. The remainder of plaintiff's claim amounting to $2,506 was denied by letter dated June 27, 1949, on the ground that it was a claim for unliquidated damages for breach of contract, notwithstanding the fact that both of plaintiff's claims for $1,790 and $2,506, were founded on defendant's failure to follow the sequence of work set forth in the specifications. The letter dated August 26, 1949, upon which defendant relies, refers to the June 27, 1949, letter and appears to be no more than an affirmation of that decision which clearly was not decided on a question of fact. No findings of fact were made by the contracting officer. Even if the August letter is considered by itself the most that can be said for defendant is that it is ambiguous. Certainly if the contracting officer's decision is to be accorded finality it should be unequivocal and clear enough to apprise plaintiff of whether it was based on a question of fact or law so that plaintiff can reasonably determine whether an appeal is warranted. When the decision is ambiguous, as the August letter is, we must look to the surrounding circumstances to determine its meaning. In so doing we conclude that the contracting officer's decision was based on a question of law and, therefore, it was unnecessary for plaintiff to take an appeal therefrom. Southeastern Oil Florida, Inc., v. United States, 127 Ct.Cl. 480; Cramp Shipbuilding Co. v. United States, 122 Ct.Cl. 72, 99; Continental Illinois National Bank & Trust Co. v. United States, 101 F. Supp. 755, 121 Ct.Cl. 203, 246; Pottsville Casting & Machine Shops v. United States, 101 F.Supp. 370, 121 Ct.Cl. 129; Anthony P. Miller, Inc., v. United States, supra, 77 F.Supp. 209, 111 Ct.Cl. at page 330.

The plaintiff claims $500 as overhead in its petition but offered no proof on the matter and failed to mention it in its briefs. Therefore, that item is disallowed. The plaintiff is entitled to recover $2,506.

It is so ordered.

JONES, Chief Judge, and LARAMORE, MADDEN and WHITAKER, Judges, concur.