UNITED STATES *v.* BLAIR, INDIVIDUALLY AND TO THE USE OF ROANOKE MARBLE & GRANITE CO., INC.

No. 75. Argued February 1, 1944.—Decided April 10, 1944.

*Assistant Attorney General Shea,* with whom *Solicitor General Fahy* and *Messrs. Valentine Brookes* and *Melvin Richter* were on the brief, for the United States.

*Messrs. H. Cecil Kilpatrick* and *Richard S. Doyle,* with whom *Mr. Fred S. Ball, Jr.* was on the brief, for respondent.

*Messrs. Prentice E. Edrington, Bernard J. Gallagher, John W. Gaskins, William E. Hayes,* and *Frederick Schwertner* filed a brief on behalf of the Associated General Contractors of America, Inc., as *amicus curiae,* in support of the respondent.

MR. JUSTICE MURPHY delivered the opinion of the Court.

Respondent, a general contractor of long experience in constructing federal buildings, was awarded a contract by the United States to construct certain buildings at the Veterans' Administration Facility at Roanoke, Virginia. After completing the contract, respondent filed a claim with the Veterans' Administration for certain expenses which he claimed were caused by the delay of a mechanical contractor and for other expenses alleged to have been imposed on him by the arbitrary, capricious and unfair conduct of Government agents at the work site. The claim was rejected and this suit in the Court of Claims followed. Judgment in the sum of $130,911.08 was awarded by that court to respondent, 99 Ct. Cls. 71. We granted certiorari because of important questions of interpretation of the Government construction contract used in this case.[1]

## I.

Respondent's contract provided that the construction work was to be completed within 420 days from the receipt of notice to proceed. Concurrently, one R. J. Redmon was awarded a mechanical contract [2] by the United

---

[1] The form of Government contract here involved was "U. S. Government Form P. W. A. 51," the critical provisions of which are substantially the same as those in the standard form of Government construction contract.

[2] The terms and conditions of both respondent's and Redmon's contracts were identical, differing only in the description of the work to be performed.

States to perform the plumbing, heating and electrical work in the buildings to be constructed by respondent. Redmon's work was to be commenced promptly after receipt of notice to proceed and was to be completed at a date not later than that provided in respondent's contract.

Respondent proceeded promptly with the construction work. He planned to complete the work within 314 days instead of the 420 days allowed him by the contract. However, no representative of Redmon reported at the work site until nearly three months after he received notice to proceed. The contracting officer had previously made many urgent demands that Redmon proceed with his work and had advised him that the progress of respondent's construction work was being delayed by his failure to start work; Redmon had also been threatened with termination of his contract. He finally started work, but made slow progress. At no time did Redmon have adequate equipment or a sufficient number of men on the job properly to carry on the work called for by his contract, nor was he financially able at this time to complete his work. The Court of Claims found that reasonable inquiry by the Government would have disclosed these facts but that no such inquiry was made because of false statements and reports made to the contracting officer by the Government agents in charge of the work at the site.

Several months later, Redmon advised the contracting officer that he was unable to proceed with his contract. Redmon's surety secured a substitute and every effort was made to overcome the delay. As a result, respondent was able to finish his construction work within the required 420 days but not within the 314 days as he had planned. The court below found that respondent was unreasonably delayed for a period of three and one-half months due to the failure of the United States promptly to terminate

Redmon's right to proceed, that the cost of the delay to respondent was $51,249.52, and that the United States was liable therefor.

We are of the opinion, however, that nothing in the Government construction contract used in this case imposed an obligation or duty on the Government to aid respondent in completing his contract prior to the stipulated completion date and that it was error for the Court of Claims to award damages to respondent based upon a breach of this non-existent obligation.

If the parties did intend to impose such an obligation or duty on the Government, they failed to embody that intention expressly in the contract. Article 13 of the contract merely obligates the contractor to cooperate with other Government contractors and to refrain from committing or permitting any act which would delay such other contractors. Article 9 imposes liquidated damages upon the contractor for delay in completing his work unless due to such unforeseeable causes as "acts of the Government." Nowhere is there spelled out any duty on the Government to take affirmative steps to prevent a contractor from unreasonably delaying or interfering with the attempt of another contractor to finish ahead of his schedule.

Nor is there anything in the context of the contract to lead us to believe that the parties meant more than they said, or that the contract implies something that was not expressed. The Government and respondent covenanted that the construction work would be completed within 420 days; Redmon's contract was grounded on this same time estimate. They cannot be said to have executed these contracts in contemplation of the then unrevealed intention of respondent to complete his work three and one-half months early. The fact that respondent subsequently gave notice of this intention to all the other parties con-

cerned could not give rise to a new obligation on the Government to compel accelerated performance from Redmon.

Respondent had the undoubted right to finish his construction work in less time than the stipulated 420 days, but he could not be forced to do so under the terms of the contract. To hold that he can exact damages from the Government for failing to cooperate fully in changing the contract by shortening the time provisions would be to imply a grossly unequal obligation. We cannot sanction such liability without more explicit language in the contract. Compare *Crook Co.* v. *United States,* 270 U. S. 4; *United States* v. *Rice,* 317 U. S. 61.

## II.

The Court of Claims, in addition to awarding damages for the Government's delay in terminating Redmon's contract, awarded respondent $79,661.56 damages for extra labor and materials, excess wages and miscellaneous costs found to be the result of unauthorized acts, rulings and instructions of the Government superintendent and his assistant. The court also found that these acts, rulings and instructions were unreasonable and in many instances arbitrary, capricious and so grossly erroneous as to imply bad faith.

Assuming without deciding that the actions complained of were unauthorized, unreasonable and arbitrary, we cannot conclude that recovery of the resulting damages was proper in this case. Article 15 of the contract in suit provides that all disputes "concerning questions arising under this contract shall be decided by the contracting officer or his duly authorized representative, subject to written appeal by the contractor within 30 days to the head of the department concerned or his duly authorized representative, whose decision shall be final and conclusive upon the parties thereto as to such questions." All

of the items on which the recovery of $79,661.56 was based were the subject of "disputes concerning questions arising under this contract." Respondent appealed some of the decisions or instructions of the Government superintendent to the contracting officer, which resulted in at least one ruling favorable to respondent.[3] As to the adverse rulings, however, respondent made no further appeal to the head of the appropriate department or his authorized representative. Moreover, the remaining items which were the subject of sharp dispute between respondent and the superintendent were not even appealed by respondent to the contracting officer. And where the contracting officer could be said to have acquiesced in the superintendent's rulings, no attempt was made to appeal further to the departmental head.

Respondent has thus chosen not to follow "the only avenue for relief," *United States* v. *Callahan Walker Co.*, 317 U. S. 56, 61, available for the settlement of disputes concerning questions arising under this contract. In Article 15 the parties clearly set forth an administrative procedure for respondent to follow. Such a procedure provided a complete and reasonable means of correcting the abuses alleged to exist in this case. Arbitrary rulings and actions of subordinate officers are often adjusted most easily and satisfactory by their superiors. Furthermore, Article 15 provided the Government with an opportunity to mitigate or avoid damages by correcting errors or excesses of its subordinate officers. Having accepted and agreed to these provisions, respondent was not free to disregard them without due cause, accumulate large damages and then sue for recovery in the Court of Claims. Nor can the Government be so easily deprived of the benefits of the administrative machinery it has created to adjudicate disputes and to avoid large damage claims.

---

[3] See Part III, *infra.*

The Court of Claims sought to justify respondent's failure to pursue the procedure outlined in Article 15. It found that the superintendent and his assistant acted so unreasonably as to make it impossible for respondent to invoke the appeal procedure without subjecting himself to punishment and reprisals. It also found that respondent reasonably concluded that "the best and most practical way of handling the matter of protests" was informally through conferences with the contracting officer in Washington; the latter, however, was often unable or unwilling to help him. Thus the court ruled that respondent was excused from following the procedure set forth in the contract. We cannot agree. Even if the conduct of the Government superintendent or contracting officer, or their assistants, was so flagrantly unreasonable or so grossly erroneous as to imply bad faith, the appeal provisions of the contract must be exhausted before relief is sought in the courts. There was no finding or evidence that appeal to the head of the appropriate department or to his authorized representative would have been futile or prejudicial. Compare *United States* v. *Smith,* 256 U. S. 11, 16; *Ripley* v. *United States,* 223 U. S. 695, 702. We cannot on this record attribute to the departmental head the alleged unreasonable attitude of his subordinates. Nor can we assume that the departmental head would have adopted an arbitrary attitude or refused to grant respondent the relief to which he may have been entitled. Moreover, nothing in the record suggests that he could not effectively supervise his subordinates or provide full and prompt relief. Thus, absent a valid excuse for not appealing the disputed items to the departmental head pursuant to Article 15, respondent cannot assert a claim for damages in the Court of Claims. If it were shown that the appeal procedure provided in the contract was in fact inadequate for the correction of the alleged unreasonable attitude of the subordinate Government officials, we would have quite a

different case. But here we must insist, not that respondent turn square corners, but that he exhaust the ample remedies agreed upon.

### III.

Included in the $79,661.56 award of miscellaneous damages was one item of $9,730.27 on a claim to the use of the Roanoke Marble & Granite Company, Inc., a subcontractor of respondent who furnished the materials and performed the labor necessary to install the tile, terrazzo, marble and soapstone work called for in respondent's contract with the Government. This award was based upon extra labor costs incurred under conditions erroneously exacted by the Government superintendent. Respondent appealed this matter to the contracting officer, who finally rendered a decision in favor of respondent and the subcontractor. The Government has not reimbursed either respondent or the subcontractor for these excess labor costs; nor has respondent paid the subcontractor for such costs. The court below made no finding, and the subcontract as introduced in the record does not expressly indicate, that respondent was liable to the subcontractor for the acts of the Government upon which the claim was based.

Clearly the subcontractor could not recover this claim in a suit against the United States, for there was no express or implied contract between him and the Government. *Merritt* v. *United States,* 267 U. S. 338. But it does not follow that respondent is barred from suing for this amount. Respondent was the only person legally bound to perform his contract with the Government and he had the undoubted right to recover from the Government the contract price for the tile, terrazzo, marble and soapstone work whether that work was performed personally or through another. This necessarily implies the right to recover extra costs and services wrongfully demanded of respondent under the contract, regardless of whether such

costs were incurred or such services were performed personally or through a subcontractor. Respondent's contract with the Government is thus sufficient to sustain an action for extra costs wrongfully demanded under that contract. *Hunt* v. *United States,* 257 U. S. 125.

The decision of the Court of Claims is reversed as to all items except the claim of $9,730.27. We affirm the judgment as to the latter claim.

MR. JUSTICE FRANKFURTER, dissenting in part:

Those dealing with the Government must no doubt turn square corners. While agents for private principals may waive or modify provisions in contracts which circumstances have rendered harsh, provisions in government contracts cannot be so alleviated. But in order to enforce the terms of a government contract courts must first construe them. And there is neither law nor policy that requires that courts in construing the terms of a government contract should turn squarer corners than if the same terms were contained in a contract between private parties. "A Government contract should be interpreted as are contracts between individuals, with a view to ascertaining the intention of the parties and to give it effect accordingly, if that can be done consistently with the terms of the instrument." *Hollerbach* v. *United States,* 233 U. S. 165, 171–172. Like all other writings that do not have the precision of mathematical terms, government contracts have interstices that secrete relevant implications. Neither a statute which provides that contracts shall be reduced to writing, nor the parol evidence rule "precludes reliance upon a warranty implied by law." *United States* v. *Spearin,* 248 U. S. 132, 138. Unless the terms of a contract are so explicit as to preclude it, the presupposition of fair dealing surely must underlie a government as well as a private contract. *Ripley* v. *United*

*States,* 223 U. S. 695, 701–702; *United States* v. *Smith,* 256 U. S. 11, 16.

Accordingly, provisions in a government contract defining methods for settling controversies by appeal to the contracting branch of the Government presuppose effective resort to such methods of settling questions that arise in carrying out a contract—they presuppose that administrative remedies as a condition to judicial relief are not rendered futile and nugatory. This does not of course question the good faith of the head of the Veterans' Administration. But where the man on the spot, in his daily relations with the contractor, shows the kind of arbitrary attitude found by the Court of Claims, he cannot be effectively supervised by the head of a department. In any event, the burden of incurring the subordinate's future hostility by appeals to the head of a department should not be cast on the contractor. The findings of the Court of Claims in this case can only mean that it would have been wholly futile, and worse than futile, to invoke the explicit provisions of the contract for resort to administrative relief. Therefore, as a reciprocal duty of the Government, the contract brings into operation the implied warranty that those who have in effective keeping the administrative machinery for settling controversies will not prevent its utilization for all practical purposes.

The Court of Claims awarded respondent $79,661.56 to compensate for losses and increased costs resulting from the unreasonable and improper requirements imposed upon the contractor by the Government's superintendent of construction and his assistant. The circumstances surrounding the various items which go to make up this sum differ in details, but the basis on which the Court of Claims found for the contractor is the same.

The findings of fact of the court below tell a story of arbitrary impositions. From the outset, the superintend-

ing government officers required the contractor "to do things admittedly not required of him under the contract on threat of reprisals for refusal." These were not empty threats. The evidence shows that an unauthorized and unreasonable order to erect outside scaffolding for laying bricks was enforced by rejecting brickwork which was not precisely uniform to a maximum of one-sixteenth of an inch by measurement, and exacting of plaintiff mortar joints that did not vary more than one-eighth of an inch by measurement. That these rejections and exactions were wilful and oppressive became clear when all objections ceased as soon as the contractor decided to comply and erect the outside scaffolds. This is but one illustration of what was apparently a systematic practice of unjustified demands and vexations.

The Court of Claims found that the superintendent and his assistant "resented plaintiff's making protest to the contracting officer, thereby rendering it impossible for plaintiff effectively to protest in writing in each instance to the contracting officer through the defendant's officer at the site of the work. . . . The contracting officer in those cases involving unreasonable and arbitrary acts and instructions of the officers at the site of the work stated to plaintiff that he understood and appreciated the troubles and difficulties under which plaintiff was having to perform the work, but there was practically nothing he could do about it and that plaintiff should keep him informed but that plaintiff 'would just have to do the best he could to get along' with the officers and inspectors at the site of the work, to the end that the work be completed as soon as possible." If there is substantial evidence supporting these findings, this Court's power of review is confined to questions of law. 53 Stat. 752, 28 U. S. C. § 288.

For all but one item, there can be no doubt that the evidence is adequate and the award in accordance with

law. The contractor was awarded $107.50 for the extra cost of temperature steel used by order of the superintendent of construction in slabs reinforced with two-way rods. The record makes clear that the contract specifications supported this order of the superintendent, in that no distinction was made as to whether the slabs were reinforced by one-way or two-way rods, and the fact that the contracting officer subsequently relieved the contractor of this requirement as to two-way rods does not justify the award. In view of what I deem to be legal principles governing the construction of contracts, I should therefore affirm the judgment of the Court of Claims for damages resulting from the acts of the superintending officers after deducting $107.50.

MR. JUSTICE ROBERTS joins in this opinion.