DONOVAN CONSTRUCTION COMPANY and James Construction Company, a Joint Venture, Doing Business as Donovan-James Company,

v.

The UNITED STATES.

No. 230-53.

United States Court of Claims.
April 3, 1957.

Reginald G. Hearn, San Francisco, Cal., for plaintiffs.

John R. Franklin, Washington, D. C., with whom was Asst. Atty. Gen. George Cochran Doub, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

LITTLETON, Judge.

Plaintiffs, as prime contractors, have brought this suit on behalf of their subcontractor to recover additional costs incurred by the subcontractor under a Government contract which provided for the construction of a 230,000-volt, double-circuit, steel tower transmission line, approximately 18.3 miles long, within the Bureau of Reclamation's Central Valley Project in California.

After work had commenced on the contract, a storm of unusual severity occurred along the entire length of the Central Valley in California, resulting in unusually heavy rainfall in the headwater areas in all of the streams having their sources in the Sierra Nevada Mountains. On three different occasions the American River overflowed its banks and caused a serious flood in the area where the contract work in question was in progress. The flood stream carried vast quantities of debris and caused considerable damage to the contract work. Excavations for footings were filled with silt, and the backfill around other footings was washed away. Stub angles were bent and steel members were bent or lost.

The repair of the steel towers and the unassembled components thereof was

made by the firm of Carrico & Gautier, a partnership, with whom plaintiffs had subcontracted for the erection of the steel towers. Exclusive of any allowance for overhead and profit, the total cost incurred by the subcontractor in repairing this damage caused by the flooding waters is found to be $14,555.56. Finding 24. Plaintiffs seek judgment in this amount.

The Government defends on two grounds: First, that plaintiffs, having failed to show a liability on their part to the subcontractor, cannot recover on the latter's behalf in this suit. Defendant relies on the decisions of this court in Severin v. United States, 99 Ct.Cl. 435, certiorari denied 322 U.S. 733, 64 S.Ct. 1045, 88 L.Ed. 1567, and in the Continental Illinois National Bank & Trust Co. v. United States cases, 81 F. Supp. 596, 112 Ct.Cl. 563; and 101 F. Supp. 755, 121 Ct.Cl. 203, certiorari denied 343 U.S. 963, 72 S.Ct. 1057, 96 L. Ed. 1361. Second, that under Article 10 of the contract (finding 10) plaintiffs were bound to replace or repair at their own expense any work or materials that were damaged by the flood.

The above decisions hold that there can be no recovery by the prime contractor on behalf of the subcontractor in the absence of a showing that the prime contractor is in turn liable to the subcontractor on the claim asserted against the Government. Defendant alleges that no such showing has been made and points to the following provision of the subcontract which it argues shows the contrary:

"The Subcontractor shall hold and save the Contractor harmless from any liability for damage to the said work, or for injury or damage to persons or property occurring on or in connection therewith."

Plaintiffs first contend that despite the above provision they are liable to the subcontractor under the subcontract for the damage suffered here, and in the alternative rely on United States v. Blair, 321 U.S. 730, 737, 64 S.Ct. 820, 88 L.Ed. 1039, where recovery by the prime con-tractor on behalf of the subcontractor was allowed even though the subcontract did not expressly provide that the prime contractor was liable to the subcontractor on the claims there made against the Government.

Certiorari was denied in the last of the above-cited Continental Illinois National Bank & Trust Co. cases after the Supreme Court's decision in the Blair case. The holdings can be reconciled on the ground that if the subcontract is silent on the question of non-liability of the prime contractor then recovery can be had by the prime contractor on behalf of the subcontractor but where the subcontract expressly negates any liability of the prime contractor to the subcontractor then recovery on behalf of the subcontractor cannot be allowed.

The above-quoted provision relied on by the defendant might appear on first reading to relieve the contractor from liability to the subcontractor. Yet, under the prime contract, paragraph 58 of the specifications entitled *"Handling and transportation of steel"* (Italics ours), the repair of material damaged due to no fault of the contractor is to be treated as extra work and the subcontract provides that the contractor will pay the subcontractor for extra work "as and when it is paid therefor by the Principal [Government]." The effect of this provision is to condition the liability of the prime contractor to the subcontractor, with respect to extra work, on whether or not it succeeds in receiving payment from the Government. Such a condition is not an unusual or unreasonable one, and as a practical matter is perhaps the best that a subcontractor could hope to obtain from the prime contractor. Under it, together with Article 10 (finding 15) of the subcontract, the prime contractor is obligated to proceed against the Government on behalf of the subcontractor on any claim for extra work which the latter may have relative to the contract work. This, we hold, includes recourse to the courts where the claims are not settled administratively.

With respect to the merits of the claim, plaintiffs point to the language in the specifications, paragraph 25, which provide that the contractor

> "will be charged, as hereafter provided in this paragraph, for any material lost or damaged after delivery, except as otherwise specifically provided in these specifications."

The plaintiffs next direct the court's attention to the following sentence in paragraph 58 of the specifications:

> "The contracting officer may order the contractor to repair material which is damaged due to no fault of the contractor and payment therefor will be made as extra work under the provisions of article 5 of the contract * * *."

Thus, plaintiffs allege that since the damage sustained was neither the fault of the subcontractor nor themselves, the above provisions require that they be reimbursed by the Government for the cost of repairing the flood damage.

With respect to paragraph 58 of the specifications, defendant takes the position that it is intended to deal only with the handling and care to be used in the transportation of the components of the steel towers, and places the contractors on notice that they may be required to make certain repairs as extra work with respect to the tower steel furnished by defendant which may be damaged in transit or in handling prior to actual delivery to the contractors.

■ We are of the opinion that there has been no breach by the Government. The specification relied upon contemplates that the contracting officer *may* order the contractor to repair material which is damaged due to no fault of the contractor and that "payment therefor will be made as extra work under the provisions of article 5 of the contract."

The replies by the defendant to plaintiffs' letters requesting additional compensation soon after the flooding show no such recognition of liability as for extra work on the part of the contracting officer. Finding 6. Article 5 of the contract dealing with extras, and which is specifically referred to in the specification, provides that "no charge for any extra work or material will be allowed unless the same has been ordered in writing by the contracting officer * * *." Plaintiffs were directed to proceed with the contract work, which indeed they were required to do under the contract, and were informed that their requests would be considered as a claim for additional compensation to be dealt with after the completion of the contract.

■ The repair of the type of damage sustained here is not generally regarded as extra work, and we do not believe that a provision, such as that found in the contract specifications, which provides that the contracting officer may treat the repair of certain damaged material as extra work, is subject to an interpretation which would make the Government accountable for the repair of damage which happens not to be the fault of the contractor. While the damage might have occurred while the materials were being transported or handled, the damage in question actually occurred to the steel towers and materials therefor *after* delivery (paragraph 25 of the specifications) and *not* while the materials used to build the towers were in the process of being transported or handled as provided in paragraph 58 of the specifications. Therefore, the exception to the general provisions that the plaintiff must bear the cost of repair to materials furnished by the Government where the damage occurs after delivery, which exception appears in paragraph 58 of the specifications and has a limited application, does not serve to place on the Government the obligation to pay for the repair of the materials damaged under the particular facts of this case.

■ Nor do we find merit in plaintiffs' attempted distinction between the words "responsible" and "liable", or their assertion that liability should rest with the Government apart from what the contract may have provided because the materials were supplied by it and the

# 902

work was done on government-owned land.

Plaintiffs' petition will be dismissed. It is so ordered.

JONES, Chief Judge, and LARA-MORE, MADDEN and WHITAKER, Judges, concur.