**B. H. DEACON CO., Inc.**

v.

**UNITED STATES of America**
and
Gerber Plumbing Fixtures, Inc.
Civ. A. No. 25350.

United States District Court
E. D. Pennsylvania.
Nov. 23, 1960.

Robert C. Duffy, by Samuel Stewart, Philadelphia, Pa., for plaintiff.

Charles M. Donnelly, Asst. U. S. Atty., Walter Alessandroni, U. S. Atty., Philadelphia, Pa., for defendant United States.

GANEY, Chief Judge.

Plaintiff, B. H. Deacon Co., Inc., and the defendant, United States of America, entered into a contract designated N155–29836, on April 24, 1957. The contract called for the purchase of 475 lavatories at $16.10 each, with a total contract price of $7,647.50 with delivery within ninety days of specified numbers at various designations.

On August 15, 1957, 255 lavatories were inspected and approved by a Navy Inspector at the factory of plaintiff's supplier and were eventually paid for by defendant. Later, the defendant discovered the lavatories did not conform to the specifications required by the contract, and the goods delivered to the Naval activities were rejected. Plaintiff, when notified, submitted a written complaint concerning the rejection to the Contracting Officer, a procedure which was set up by section 29 of the Contract entitled "Disputes."[1]

In this section all questions *of fact* which were subjects of a dispute under

---

[1] "29. Disputes—Except as otherwise provided in this contract, any dispute concerning a question of fact arising under this contract which is not disposed of by agreement shall be decided by the Contracting Officer, who shall reduce his decision to writing and mail or otherwise furnish a copy thereof to the Contractor. Within 30 days from the date of receipt of such copy, the Contractor may appeal by mailing or otherwise furnishing to the Contracting Officer a written appeal addressed to the Secretary, and the decision of the Secretary or his duly authorized representative for the hearing of such appeals shall, unless determined by a court of competent jurisdiction to have been fraudulent or capricious or arbitrary or so grossly erroneous as necessarily to imply bad faith, or not supported by substantial evidence, be final and conclusive: *provided* that, if no such appeal is taken, the decision of the Contracting Officer shall be final and conclusive. In connection with any appeal proceeding under this clause, the Contractor shall be accorded an opportunity to be heard and to offer evidence in support of its appeal. Pending final decision of a dispute hereunder, the Contractor shall proceed diligently with the performance of the contract and in accordance with the Contracting Officer's decision." (Emphasis added.)

the contract were to be submitted to the Contracting Officer and if his decision was unsatisfactory to either party a thirty day period was allotted to the unsatisfied party to appeal to the Secretary of the Navy. When plaintiff was notified as to the decision made by the Contracting Officer on October 25, 1957, which decision held plaintiff responsible for the non-conforming goods, plaintiff did nothing to replace the defective goods nor did it appeal the decision to the Secretary of the Navy.

Subsequently, the contract was terminated by letter dated December 31, 1957, and defendant entered into a replacement contract for $11,172.00 bearing No. N155–36734 and dated March 27, 1958, with another, Noland Co., Inc. Defendant tried unsuccessfully to get the money it had already paid on the Deacon contract and the increment between the first and second contracts.

Plaintiff then filed its complaint in this action and later moved for a summary judgment under F.R.Civ.P. 56, 28 U.S.C. for the amount unpaid on its original contract, which was $3,542, while defendant counterclaimed for the amount it had paid plaintiff plus the extra expenses incurred by reason of the replacement contract. It also moved for a summary judgment on the counterclaim.

■ The only dispute before the Contracting Officer was a factual one. The question was whether or not the contract called for holes to be drilled on 4 inch or 8 inch centers. The plaintiff claimed the former and the defendant, the latter. Under the powers given him in clause 29 of the contract, the Contracting Officer decided against plaintiff with respect to the dispute. It was not contested at any time during the dispute that there was no contract. A thirty-day period for appeal was given by clause 29 and it was not taken. Since plaintiff agreed to settlement of disputes by this procedure when the contract was entered into and since plaintiff did not exhaust its administrative remedies under the contract, this court is precluded from hearing any issue of fact and the Contracting Officer's decision on factual issues stands. As the Supreme Court of the United States said in United States v. Moorman, 1949, 338 U.S. 457, 462, 70 S.Ct. 288, 291, 94 L.Ed. 256:

"It is true that the intention of parties to submit their contractual disputes to final determination outside the courts should be made manifest by plain language. Mercantile Trust Co. v. Hensey, 205 U.S. 298, 309 [27 S.Ct. 535, 51 L.Ed. 811]. But this does not mean that hostility to such provisions can justify blindness to a plain intent of parties to adopt this method for settlement of their disputes, *nor should* such an agreement of parties be frustrated by judicial 'interpretation' of contracts. If parties competent to decide for themselves are to be deprived of the privilege of making such anticipatory provisions for settlement of disputes, this deprivation should come from the legislative branch of government." (Emphasis added.)

While it is clear that only questions of fact were to be submitted to the Contracting Officer under the disputes clause, there existed only questions of fact in issue and therefore plaintiff can't be heard to complain if plaintiff agreed to abide by the procedure outlined in clause 29 and then failed to exhaust the safeguards outlined in the procedure. The force and the effect of such a disputes clause as 29 were discussed in United States v. Joseph A. Holpuch Co., 1946, 328 U.S. 234, 235, 239, 66 S.Ct. 1000, 1003, 90 L.Ed. 1192, wherein the Court said of Article 15 of the contract (a similar provision to 29 of the present contract),

"It is a clear, unambiguous provision applicable at all times and binding on all parties to the contract. No court is justified in disregarding its letter or spirit. Article 15 is controlling as to all disputes 'concerning questions arising under this contract' unless otherwise specified in the contract. It creates a mechanism whereby adjustments may be made and errors corrected on an ad-

ministrative level, thereby permitting the Government to mitigate or avoid large damage claims that might otherwise be created. United States v. Blair, 321 U.S. 730, 735 [64 S.Ct. 820, 88 L.Ed. 1039]. This mechanism, moreover, is exclusive in nature. Solely through its operation may claims be made and adjudicated as to matters arising under the contract. United States v. Blair, supra; United States v. Callahan Walker [Const.] Co., 317 U.S. 56, 61 [63 S.Ct. 113, 87 L.Ed. 49]. And in the absence of some clear evidence that the appeal procedure is inadequate or unavailable, that procedure must be pursued and exhausted before a contractor can be heard to complain in a court. It follows that when a contractor chooses without due cause to ignore the provisions of Article 15 he destroys his right to sue for damages in the Court of Claims."

 Thus, plaintiff cannot now claim that the specifications were otherwise than what the Contracting Officer said they were. See also Henry E. Wile Co. v. United States, Ct.Cl.1959, 169 F.Supp. 249, 251, where a similar clause provided the only method for appealing a question of fact under a contract. Nor can we say that the administrative remedies were so inadequate as to be unfair to plaintiff. And even if they were, our courts have held that administrative remedies must first be exhausted before there is an appeal to the courts. See Hellander v. United States, Ct.Cl.1959, 178 F.Supp. 932, 938, 939.

 Plaintiff raised two points that can quickly be disposed of with respect to its right of appeal to the courts. The first is that after being notified of the rejection, it did not resort to the dispute procedure under the contract. However, in the letter of September 26, 1957, the term appeal was specifically used by it in setting forth its arguments to the Contracting Officer why its goods were conforming. These arguments were rejected by the Contracting Officer in his

decision. The second point is that the dispute involves a question of law, rather than fact, which is not within the scope of dispute clause 29. The question of law asserted is that, when the goods were delivered, accepted, inspected and approved at Woodbridge, New Jersey, this constituted final acceptance within the meaning of the contract. The contract on pages 1–6 makes it clear that:

"Acceptance of property to be furnished hereunder shall be made at destination by the receiving activity."

Plaintiff's assertion cannot be accepted. Thus, even though Woodbridge, New Jersey was the place of inspection, it was not the receiving activity within the meaning of the contract, as the goods had in no way reached the base of naval activity. Instead it was a place of preliminary inspection. Furthermore, the contract incorporated General Provisions by reference. One of them is Form 111 (Rev. 12–54) entitled Additional General Provisions, which provides in paragraph 22 as follows:

"Notwithstanding paragraph 5 of the General Provisions entitled Inspection, the Contractor guarantees that at the time of delivery thereof the articles provided for under this contract will be free from any defects in material or workmanship and will conform to the requirements of this contract. Notice of any such defect or nonconformance shall be given by the Government to the Contractor within one year of the delivery of the defective or non-conforming article. If required by the Government within a reasonable time after such notice, the Contractor shall with all possible speed correct or replace the defective or non-conforming article or part thereof. * * *"

The contract itself gave the defendant a chance to reject the goods if non-conforming under the above mentioned guaranty clause. Defendant gave notice within the required time so that plaintiff

cannot now assert that the dispute must be submitted to this court.

██ Finally, defendant was perfectly correct in seeking a new contract where no adjustments were made by plaintiff or no attempt was made by it to conform to contractual specifications. Paragraph 11 of the contract[2] entitled Default set up the government's rights with respect to any non-compliance. The plaintiff was notified as to the defendant's intended action to replace its contract with another if conforming goods were not forthcoming. Since plaintiff had fulfilled the original contract and since the defendant was obliged to enter into a replacement contract, plaintiff became responsible to defendant for the amount already paid plaintiff and for the increase in cost in securing a replacement contract provided that the increase was reasonable and obtained in good faith. However, the reasonableness of the cost of the replacement contract and the good faith of the defendant are factual issues for a jury. These questions may not be determined by the court in a motion for summary judgment.

██ Because there are no questions of fact before this court on the original contract, and because this court has before it only a question of law on that contract, whether to grant summary judgment for plaintiff or not, a motion for summary judgment under F.R.Civ.P. 56 is properly cognizable at this time.

Accordingly, both plaintiff's motion for summary judgment on the original contract and defendant's motion for summary judgment on the counterclaim are hereby denied.

2. "11. Default

"(a) The Government may, subject to the provisions of paragraph (b) below, by written Notice of Default to the Contractor terminate the whole or any part of this contract in any one of the following circumstances:

"(i) if the Contractor fails to make delivery of the supplies or to perform the services within the time specified herein or any extension thereof; or

"(ii) if the Contractor fails to perform any of the other provisions of this contract, or so fails to make progress as to endanger performance of this contract in accordance with its terms, and in either of these two circumstances does not cure such failure within a period of 10 days (or such longer period as the Contracting Officer may authorize in writ-

ing) after receipt of notice from the Contracting Officer specifying such failure.

\* \* \* \* \*

"(c) In the event the Government terminates this contract in whole or in part as provided in paragraph (a) of this clause, the Government may procure, upon such terms and in such manner as the Contracting Officer may deem appropriate, supplies or services similar to those so terminated, and the Contractor shall be liable to the Government for any excess costs for such similar supplies or services, Provided, that the Contractor shall continue the performance of this contract to the extent not terminated under the provisions of this clause. \* \* \*"