FETT ROOFING & SHEET METAL CO., Inc., a Virginia corporation, Plaintiff,

v.

SEABOARD SURETY COMPANY, a New York Corporation, Defendant and Third-Party Plaintiff,

v.

John B. McGAUGHY, William Marshall, Jr., and William T. McMillan, Partners trading as McGaughy, Marshall & McMillan, Architects, United States of America, and Fine and Salzberg, Inc., a Virginia corporation, Third-Party Defendants.

Civ. A. No. 6237.

United States District Court E. D. Virginia, Norfolk Division.

Oct. 10, 1968.

George J. Viertel, Newport News, Va., for plaintiff.

Howard I. Legum, Norfolk, Va., for Seaboard Surety Co. and Fine and Salzberg, Inc.

Alan J. Hofheimer, Thomas F. McPhaul, John M. Hollis and Hugh L. Patterson, Norfolk, Va., for John B. McGaughy, and others.

James A. Oast, Jr., Asst. U. S. Atty., Norfolk, Va., for the United States.

## MEMORANDUM ORDER

KELLAM, District Judge.

The Court has for determination (a) two motions of plaintiff for summary judgment, (1) for $3,671.45 representing balance of payments due under amount of contract bid and (2) determining defendant Seaboard Surety Company is liable to it for extra work and material, with amount to be later established; (b) motion of United States to dismiss the action as to it; (c) motion of John B. McGaughy and others to dismiss as to them; (d) motion of Seaboard Surety Company for summary judgment against Fett Roofing & Sheet Metal Co., Inc.

Briefly stated, Fine and Salzberg, Inc. (Fine) entered into a contract with United States to construct a post office

facility in Hampton, Virginia. Fine subcontracted with Fett Roofing & Sheet Metal Co., Inc. (Fett) for certain roofing and other work at a price of $35,525.00. Seaboard Surety Company (Seaboard) became surety on the payment and performance bond given by Fine pursuant to its contract. John B. McGaughy and others (Architects) prepared the plans and specifications for the United States and were charged with supervision of the construction of the building.

During construction, a dispute arose over the proposed use of certain materials to meet the required performance of the roofing contract. Fett contended certain material met the requirements of the contract, but Architects ruled different (and more costly) materials were required. The contract required the materials used to produce a certain "U" factor—which is the measurement in BTUs of heat flow per hour—square foot (°F) through material.[1]

Pursuant to rulings by the Architects, different materials from those contended for by Fett were used, which Fett says was at an additional cost of $10,300.00. Fett contends this sum is an extra, and due to it. Fine says, on the one hand, it is not an extra, but required by the contract and specifications, as ruled by the Architects. Fine also says it is beyond the terms of the contract and specifications, and an extra to be charged to the United States.

Fett instituted this Miller Act action against Seaboard. Seaboard impleaded Fine, alleging it was entitled to indemnity from Fine. Seaboard filed a third-party complaint and amended third-party complaint against Architects and United States, alleging they were indebted to Seaboard for any sum found to be due by Seaboard to Fett. Fine filed a cross-claim against Architects and United States.

1. It is agreed Fett has performed all the work it contracted to perform. The only issue is whether it is entitled to all or any part of its claim of $10,300.00 alleged as extras. It is also agreed that of the contract bid of $35,525.00, all but $3,671.45 has been paid. There are no offsets or claims against this remaining sum of $3,671.45.

2. There exists, a dispute as to whether the Architects correctly interpreted the language of the contract as to what should be taken into consideration in determining when the "U" factor of the roof had been met. Too, the record at this point is not clear as to whether Fett met the requirement of the Architects as an obligation of its contract, or whether it did so as an extra at the direction of Fine, or otherwise. Some of the correspondence filed in the cause refers to an alleged request by Fett for arbitration on the issue of the "U" factor, but no conclusion can be reached at this point on this issue.

Fine also contends that Fett was required as a condition precedent to the institution of this suit, to submit its contention and claim to arbitration, as provided in paragraph 11 of the General Conditions of the Specifications and Contract between Fine and the United States. The conditions of said paragraph 11 are:

DISPUTES

(a) Except as otherwise provided in this contract, any dispute concerning a question of fact arising under this contract which is not disposed of by agreement shall be decided by the Contracting Officer, who shall reduce his decision to writing and mail or otherwise furnish a copy thereof to the Lessor. The decision of the Contracting Officer shall be final and conclusive unless, within 30 days from the date of receipt of such copy, the Lessor mails or otherwise furnishes to the Contracting Officer a written appeal addressed to the Postmaster General. The decision of the Postmaster General or his duly authorized

---

1. The differences seem to arise over Architects' contention the insulation installed must meet the "U" factor, while Fett contended that all components of the roof structure must be considered in reaching the "U" factor.

representative for the determination of such appeals shall be final and conclusive. This provision shall not be pleaded in any suit involving a question of fact arising under this contract as limiting judicial review of any such decision to cases where fraud by such official or his representative or board is alleged: PROVIDED, HOWEVER, that any such decision shall be final and conclusive unless the same is fraudulent or capricious or arbitrary or so grossly erroneous as necessarily to imply bad faith or is not supported by substantial evidence. In connection with any appeal proceeding under this clause, the Lessor shall be afforded an opportunity to be heard and to offer evidence in support of his appeal. Pending final decision of a dispute hereunder, the Lessor shall proceed diligently with the performance of the contract and in accordance with the Contracting Officer's decision.

(b) This Disputes clause does not preclude consideration of questions of law in connection with decisions provided for in paragraph (a) above. Nothing in this contract, however, shall be construed as making final the decision of any administrative official, representative, or board on a question of law.

Fine says that by the terms of the contract between Fett and Fine, Fett agreed to be bound by all of the terms of Fine's contract with the United States; that since the last mentioned contract provided for arbitration, Fett was bound by the same terms.

■ The purpose of the Miller Act (jurisdiction for this suit) is to provide security for those furnishing labor and/or materials in the performance of a government contract. It should be given a liberal construction. United States for Benefit and on Behalf of Sherman v. Carter, 353 U.S. 210, 77 S.Ct. 793, 1 L. Ed.2d 776; St. Paul-Mercury Indemnity Co. v. United States, 238 F.2d 917 (10th

Cir.). The prime contractor is the one required by the Act to furnish the bond, and the Act is not for his benefit. The provisions of the contract for settlement of disputes is for disputes "arising under this contract." A right of appeal is furnished. The liability of the United States is to the prime contractor, and the contract dispute clause is for consideration of claims of the prime contractor. Nowhere does it provide for consideration of the claim of a subcontractor, and since there is no contract between the United States and the subcontractor, there is no basis for it arbitrating dispute between the sub-contractor and the general contractor. The sub-contractor has no standing before the contracting officer or the Postmaster General.

■ The remedy for a sub-contractor with a claim for labor or materials furnished on a contract with the United States is under the Miller Act. The fact that a prime contractor has a claim for the same amount pending under the dispute clause of the prime contract does not affect the Miller Act cases. John A. Johnson & Sons v. United States, 153 F.2d 534 (4th Cir.), cert. denied 328 U.S. 865, 66 S.Ct. 1372, 90 L.Ed. 1636; Wunderlich Contracting Co. v. United States, 240 F.2d 201 (10th Cir.); Fanderlik-Locke Co. v. United States, 285 F.2d 939 (10th Cir. 1960); United States for use of B's Co. v. Cleveland Electric Company of South Carolina, 373 F.2d 585 (4th Cir. 1967). The government does not recognize or deal with the sub-contractor and has no obligation to him for work performed or materials furnished. United States v. Blair, 321 U.S. 730, 64 S.Ct. 820, 88 L.Ed. 1039; United States for Use of B's Co. v. Cleveland Electric, supra. A requirement that Fett submit his claim under the dispute clause, would require him to surrender the rights given him under the Miller Act. In United States for Use of B's Co. v. Cleveland Electric, supra, the contention made by the contractor was the same as made here.

There the court said [373 F.2d 585, at 588]:

> The basic error of the prime contractor in this appeal is his contention that the subcontractor is bound in every way and exactly as the prime contractor is bound by the terms of the prime contract. It is true that the terms of the subcontract stated that the subcontractor was bound by the terms of the prime contract and that it assumed the prime contractor's obligations to the Government insofar as applicable to the work performed by the subcontractor, but this identical language has been held, and we think properly, not to require the subcontractor to pursue the administrative remedies given the prime contractor in the disputes article. Central Steel Erection Co. v. Will, 304 F.2d 548 (9 Cir. 1962); Fanderlik-Locke Co. v. United States ex rel. Morgan, 285 F.2d 939 (10 Cir. 1960), cert. denied. 365 U.S. 860, 81 S.Ct. 826, 5 L.Ed.2d 823 (1961).

3. United States moves the Court to dismiss the third-party complaint filed against it upon the grounds of (a) lack of jurisdiction of the Court, and (b) such action is premature in that the terms of the contract set up a procedure to be followed for settlement of the question at issue.

■ The provision of the contract for settling disputes over questions of fact is set out in paragraph 11 of the Specifications and is quoted above. Here the contractor agreed to present his claim or dispute to the contracting officer, with right of appeal. Until this procedure is followed, the matter is not a subject for decision by the courts. Crown Coat Front Company v. United States, 386 U. S. 503, 511, 87 S.Ct. 1177, 18 L.Ed.2d 256. In the last cited case the Court at page 512, 87 S.Ct. at page 1182 said, "[I]t is now crystal clear that the contractor must seek the relief provided for under the contract or be barred from any relief in the courts." The language of the contract in the *Crown Coat Front* case, cited

above, was the same as in the contract here. Since the question in dispute was one of fact, the contract required it be submitted to and decided by the contracting officer. His decision was final, unless appealed to the Postmaster General. Until the administrative processes "has been completed [Fine] is not entitled to pursue his legal remedies in court." United States v. Joseph A. Holpuch Co., 328 U.S. 234, 239–240, 66 S.Ct. 1000, 90 L.Ed. 1192; United States v. Blair, 321 U.S. 730, 64 S.Ct. 820; Ove Gustavsson Contracting Co. v. Floete, 278 F.2d 912, 914 (2d Cir. 1960). In the *Holpuch* case, supra, the court dealt with a similar question. In reversing the Court of Claims, the Supreme Court, dealing with the "dispute clause" of the contract, almost identical with the one here, said [328 U.S. 234, 239, 66 S.Ct. 1000]:

> Article 15 is controlling as to all disputes "concerning questions arising under this contract" unless otherwise specified in the contract. It creates a mechanism whereby adjustments may be made and errors corrected on an administrative level, thereby permitting the Government to mitigate or avoid large damage claims that might otherwise be created. United States v. Blair, 321 U.S. 730, 735, 64 S.Ct. 820, 823. This mechanism, moreover, is exclusive in nature. Solely through its operation may claims be made and adjudicated as to matters arising under the contract. United States v. Blair, supra, 321 U.S. 735, 64 S.Ct. 823; United States v. Callahan Walker Const. Co., 317 U.S. 56, 61, 63 S.Ct. 113, 115, 87 L.Ed. 49. And in the absence of some clear evidence that the appeal procedure is inadequate or unavailable, that procedure must be pursued and exhausted before a contractor can be heard to complain in a court.

It follows that when a contractor chooses without due cause to ignore the provisions of Article 15 he destroys his right to sue for damages in the Court of Claims. That court is then obliged to outlaw his claims, whatever

may be their equity. To do otherwise is to rewrite this contract.

■ The same is equally true here. The administrative processes must be completed first. Even though Fett has instituted this Miller Act action, this would not prevent Fine from proceeding with its disputed claim, nor would Fine's proceeding administratively with its claim affect Fett's right to. proceed in this Miller Act case. Fanderlik-Locke Co. v. United States, supra; John A. Johnson & Sons v. United States, supra; Wunderlich Contracting Co. v. United States, supra; United States for Use of B's Co. v. Cleveland Electric Company, supra.

The United States also says there is no jurisdiction in this Court to deal with the third-party complaint or cross-claim against it; that the United States has not consented to be sued in such an action. Fine and Seaboard say they have the right to maintain this action under the Tucker Act. 28 U.S.C. § 1346(a) (2).

■ The United States, as sovereign, is immune from suit save as it consents to be sued. United States v. Sherwood, 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058; Keifer & Keifer v. Reconstruction Finance Corp., 306 U.S. 381, 388, 59 S. Ct. 516, 83 L.Ed. 784; Minnesota v. United States, 305 U.S. 382, 387, 59 S.Ct. 292, 83 L.Ed. 235; Kansas v. United States, 204 U.S. 331, 27 S.Ct. 388, 51 L. Ed. 510. The terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit. United States v. Sherwood, supra. As is pointed out in the *Sherwood* case, jurisdiction of suits against the United States for breach of contract, and other specific instances, was conferred on the Court of Claims. Subsequently, jurisdiction on claims not exceeding $10,000.00 founded upon any contract, express or implied, with the United States, was conferred on district courts "concurrent with the Court of Claims." Any consent to be sued is to be strictly construed. United States v. Sherwood, supra; United States

v. Shaw, 309 U.S. 495, 60 S.Ct. 659, 84 L.Ed. 888; United States v. United States Fidelity & Guaranty Co., 309 U.S. 506, 60 S.Ct. 653, 84 L.Ed. 894. "The jurisdiction thus limited is unaffected by the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, which prescribe the methods by which the jurisdiction of the federal courts is to be exercised, but do not enlarge the jurisdiction." United States v. Sherwood, supra.

■ In United States v. Shaw, 309 U.S. 495, 502, 60 S.Ct. 659, the court held the Tucker Act did not provide for jurisdiction of a counter-claim or cross-action against the United States beyond the amount necessary as a set-off. "Jurisdiction * * * does not exist unless there is specific congressional authority for it." United States v. Shaw, supra, page 503, 60 S.Ct. page 662. In United States v. Carey Terminal Corporation, 209 F.Supp. 385 (D.C.N.Y.1962), the court held that district courts are without jurisdiction "over counterclaims against the United States on matters concerning which the defendant might have brought an original action under the Tucker Act." United States v. Nipissing Mines Co., 206 F. 431 (2d Cir. 1913). What was said in United States v. Wissahickon Tool Works, 84 F.Supp. 896, 902 (D.C.N.Y.1949) (affirmed 200 F.2d 936, 2d Cir. 1952) was quoted with approval in United States v. Carey Terminal Corp., supra, 209 F.Supp. 385, 387, namely:

There is no reciprocal provision authorizing counterclaims against the United States in actions in which the United States is plaintiff, and it appears to be settled that although a claim may be of such a character that an original suit might be brought on it against the United States, the provisions authorizing such a suit are not broad enough to authorize the assertion of the claim as a counterclaim in so far as it seeks to recover an affirmative judgment against the United States. United States v. Nipissing Mines Co., 2 Cir., 206 F. 431; see

United States v. Shaw, 309 U.S. 495, 60 S.Ct. 659, 84 L.Ed. 888; United States v. United States Fidelity & Guaranty Co., 309 U.S. 506, 60 S.Ct. 653, 84 L.Ed. 894; United States for use of Mutual Metal Mfg. Co. v. Biggs, D.C., 46 F.Supp. 8; 3 Moore's Federal Practice § 13.29. The motions to strike the counterclaims are to that extent granted.

■ The contention of Fine and Seaboard that maintenance of the action against United States would permit a disposition of all claims in one action is answered by the language of the Supreme Court's answering that very contention, namely, that this principle must "yield to the principle of immunity." United States v. United States Fidelity, supra, 309 U.S. 506, 513, 60 S.Ct. 653, 657.

In United States for Use of Mutual Metal Mfg. Co. v. Biggs, 46 F.Supp. 8 (D. C.Ill.1942), the court dealt with an action under the Miller Act, instituted by United States for the use and benefit of a sub-contractor against the contractor and bonding company, growing out of a contract to construct a post office. Contractor filed a counter-claim against the United States. United States moved to dismiss the counter-claim for lack of jurisdiction. In dismissing the claim of the contractor, the court said at page 11:

Further, an examination of the Miller Act, 40 U.S.C.A. § 270a et seq., indicates that the sole purpose of the Act is to protect the subcontractor, and not to provide a basis for recovery between the contractor and a third person. In Seaboard Surety Co. v. United States, 9 Cir., 84 F.2d 348, 350, the court, speaking of the scope of the Heard Act, 40 U.S.C.A. § 270, the predecessor of and substantially the same as the Miller Act, said: "It is our opinion that the statute upon which the United States brings suit on behalf of the suppliers of labor and material to the principal contractor does not contemplate anything more than adjudicating the obligation to such suppliers flowing from the bond given by the principal contractor and his surety. While the statute must be liberally construed for the purpose of protecting the claims of such suppliers, Fleischmann Const. Co. v. United States to Use of [G.W.] Forsberg, 270 U.S. 349, 46 S.Ct. 284, 70 L.Ed. 624, liberality of construction for their protection does not warrant an expansion of adjudicatory power to include controversies between other parties. It is a statutory remedy and gives no equitable jurisdiction whatsoever. So far as the statute contemplates a single action in which there may be tried the several causes of action of these suppliers, it is not designed to avoid a multiplicity of suits beyond the area of these suppliers' causes of action."

Inasmuch as the proceedings is statutory in character and vests in the District Court no general jurisdiction as in equity or law, but only jurisdiction over certain specified claims, Rules 13 and 14 have no application and counterclaims against the United States no place in the picture. To permit the claim against the United States would be to render an affirmative judgment against the United States on a counterclaim which, in the light of prevailing reasoning, is no part of the statutory proceedings. United States v. Shaw, supra; United States v. Nipissing Mines Co., supra; United States v. Eckford, supra, 6 Wall. 484, 18 L.Ed. 920.

There is no difference between filing a counterclaim and the filing of a third-party complaint. The statute makes no provision for a cross-claim or counterclaim against the United States in Miller Act actions, or under the Tucker Act, nor do either of these Acts provide for third-party actions against the United States. United States v. Sherwood, supra; United States v. Shaw, supra; United States v. United States Fidelity, supra; United States for Use of Mutual Metal Mfg. Co. v. Biggs, supra. In any event, Seaboard cannot maintain such an action; nor can Fine maintain such action against the United States on a cross-claim.

4. Next, can Seaboard and/or Fine maintain an action against Architects? If Fett is not entitled to recover against Seaboard, as the pleadings now stand, then Seaboard has no claim against Fine, Architects, or anyone. Likewise, Fine would have no claim against Architects under the first count of its cross-claim. The claim asserted by Fine against Architects in the second count of the cross-claim is not dependent on exoneration or indemnity, but is a separate cause of action. It is not related to the cause of action asserted by Fett. The issue also arises as to whether any duty is owed by Architects to Fine under the contract. This need not be disposed of at this point. It might be noted that Fine at one point asserted that Architects' interpretation of the contract was correct, and at another point asserted it was not correct.

It is therefore ORDERED that:

1. Fett is entitled to and is hereby awarded summary judgment against Seaboard for the sum of $3,671.45, with interest from April 1, 1967, and upon payment of said sum by Seaboard, it is entitled to and is hereby awarded a judgment by subrogation over against Fine for said sum. Lumbermen's Mutual Insurance Co. v. Massachusetts Bonding & Insurance Co., 310 F.2d 627 (4th Cir. 1962).

2. Fett's motion for summary judgment against Seaboard on the issue of liability for extra work alleged to be performed under the contract is denied.

3. Seaboard's motion for summary judgment against Fett is denied.

4. The motion of the United States to dismiss the cross-claim filed by Fine against it, and motion of United States to dismiss the third-party complaint and amended third-party complaint filed against it by Seaboard is granted, and such cross-claim and third-party complaint and the amended third-party complaint are dismissed as to the United States.

5. Action on the third-party complaint and amended third-party complaint filed by Seaboard against Architects and the cross-claim of Fine against Architects will be stayed pending a determination of the claim of Fett against Seaboard.

6. This action will proceed on the issue of Fett against Seaboard, on the claim for extras in the amount of $10,300.00, and the right of Seaboard over against Fine for indemnity and/or exoneration.