The **PHILADELPHIA HOUSING AUTHORITY**, Plaintiff,

v.

**DORE & ASSOCIATES CONTRACTING, INC. and Star Insurance Company**, Defendants.

No. CIV.A. 00–2077.

United States District Court,
E.D. Pennsylvania.

Sept. 2, 2000.

**634**

Jonathan S. Ziss, Philadelphia, PA, for Philadelphia Housing Authority.

Jeffrey S. Rosenblum, Ballard Spahr Andrews & Ingersoll, L.L.P., Philadelphia, PA, for Dore & Associates Contracting, Inc.

Kelly Himes Brolly, Fox Rothschild, O'Brien & Frankel, LLP, Philadelphia, PA, William T. Renz, Power, Bowen & Valimont, Doylestown, PA, for Star Ins. Co.

### MEMORANDUM & ORDER

KATZ, Senior District Judge.

Before the court is defendant Dore & Associates Contracting, Inc.'s motion for summary judgment. The motion must be granted, as the parties' contract does not permit the plaintiff to bring suit in federal court at this time.

*Background*

In February 1995, the Philadelphia Housing Authority (PHA) entered into a contract with Dore & Associates Contracting, Inc., by which Dore agreed to implode and demolish buildings at the Five Tower Site. The terms of the project required Dore to obtain a performance bond, which was issued by Star Insurance Company, the other defendant in this case. After this agreement was signed, PHA and Dore modified the contract to provide for the implosion of the Three Tower Site. Dore imploded the Five Tower Site on April 30, 1995, and the Three Tower Site on July 30, 1995. In the summer of 1996, Dore represented that it had completed all work, and the PHA released the final payment due under the contract. Subsequently, the PHA began construction of new buildings on the two sites. According to the PHA, its contractors were required to do extensive remedial work because of Dore's failure to prepare the sites properly. The PHA claims that it expended approximately $600,000 to correct Dore's errors, and it now brings suit for breach of contract, fraudulent misrepresentation, negligent

misrepresentation, and breach of warranty.

This summary judgment motion does not address the merits of the PHA's claim against Dore. Rather, Dore contends that the PHA did not comply with the contractual terms that permit Dore, at its option, to utilize arbitration, mediation, or internal appeal as an alternative to litigation. The PHA responds that it did comply and that Dore failed to exercise its right to demand an alternative mode of resolution in a timely fashion.

*Discussion*

The parties agree that the contract includes HUD form 5370, "General Conditions of the Contract for Construction, Public and Indian Housing Programs" (HUD General Conditions), *see* Def. Ex. A, as well as a document entitled "PHA General Conditions." *See* Def. Ex. B; *see also* Contract Agmt. art. 5 (Compl.Ex.1) (specifically including "General and Special Conditions" as contract documents); Compl. ¶ 11 (same). Dore relies on two provisions from these documents in support of its contention that this matter should not proceed in federal court at this time. The first is found in the HUD General Conditions:

31. Disputes

(a) "Claim," as used in this clause, means a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract. A claim arising under the contract, unlike a claim relating to the contract, is a claim that can be resolved under a contract clause that provides for the relief sought by the claimant....

1. "Contracting Officer" is the "person delegated the authority by the PHA/IHA to enter into, administer, and/or terminate this contract and designated as such in writing to the Contractor. The term includes any successor

(b) Except for disputes arising under the clauses entitled Labor Standards and Labor Standards Nonroutine Maintenance, herein, all disputes arising under or relating to this contract, including any claims for damages for the alleged breach thereof which are not disposed of by agreement, shall be resolved under this clause.

(c) All claims by the Contractor shall be in writing and submitted to the Contracting Officer [1] for a written decision. A claim by the PHA/IHA against the Contractor shall be subject to a written decision by the Contracting Officer.

(d) The Contracting Officer shall, within ___ (60 unless otherwise indicated) days after receipt of the request decide the claim or notify the Contractor of the date by which the decision will be made.

(e) The Contracting Officer's decision shall be final unless the Contractor (1) appeals in writing to a higher level in accordance with the PHA's/IHA's policy and procedures, (2) refers the appeal to an independent mediator or arbitrator, or (3) files suit in a court of competent jurisdiction. Such appeal must be made within (30 unless otherwise indicated) days after receipt of the Contracting Officer's decision.

(f) The Contractor shall proceed diligently with performance of this contract, pending final resolution of any request for relief, claim, appeal, or action arising under or relating to the contract, and comply with any decision of the Contracting Officer.

HUD General Conditions ¶ 31 (Disputes Provision). In addition, the PHA General Conditions contains the following provision: "*Arbitration Clause:* Disputes in arbitration resolved pursuant to paragraph 31(e) *DISPUTES* clause of the HUD General Conditions shall also be subject to the

Contracting Officer and any duly authorized representative of the Contracting Officer also designated in writing." HUD General Conditions ¶ 1(c).

provisions of the Pennsylvania Commonwealth Uniform Arbitration Act. 42 Pa. C.S.A. Section 7302(c), as amended." PHA General Conditions ¶ 21. Dore argues that the court must grant summary judgment because the PHA did not comply with these provisions.

In its response to the motion, the PHA submits correspondence pertaining to the sites and argues that two letters from its contracting officers constitute "decisions" that triggered Dore's obligation to demand alternative resolution. With respect to the earlier dispute, James J. Lombardo, the PHA's project director, and Arthur Dore, the president of Dore & Associates, exchanged a series of letters from October 1, 1996, through December 2, 1996. *See* Plf. Resp. Ex. A–H. In December, two additional letters passed between the PHA's project engineer, Dale F. Morris, and Mr. Dore. *See id.* Ex. I–J. On December 16, 1996, Albert Novack, the director of the PHA's contract division, wrote to Star Insurance Company, stating that Dore's work violated the contract and directing future correspondence to the attention of James Herrmann, the PHA's contracting officer. *See* Plf. Ex. K. This letter was copied to Mr. Herrmann and to Mr. Dore. *See id.* Mr. Dore subsequently informed Star that his corporation would indemnify Star, *see id.* Ex. L.; on January 28, 1997, Star's director of bond claims, Alan Pavlic, also responded, requesting further information from Mr. Herrmann regarding the allegations in the December 16, 1996, letter from Mr. Novack *See id.* Ex. M, N. Mr. Herrmann answered on June 4, 1997, stating that Dore did not complete the work on the sites and that the PHA demanded payment for the monies the PHA expended to correct the alleged deficiencies. *See id.* Ex. P. This letter was not copied to Arthur Dore or to Dore Associates. According to the PHA, this letter to Star constitutes the contracting officer's "decision" required by contract.[2]

With respect to the alleged nonconformities discovered in 1999, correspondence began with letters between Mr. Lombardo and Mr. Dore. *See* Plf. Ex. T, U (letters of February 16, 1999, from, respectively, Mr. Lombardo and Mr. Dore). On March 10, 1999, Michael Leithead, the new contracting officer, responded to Mr. Dore by letter, stating that Dore was in breach of contract and that the PHA intended to bring suit. *See id.* Ex. V. Mr. Dore responded the next day, denying all liability. *See id.* Ex. W.

▮ Notwithstanding the fact that two of PHA's contracting officers wrote letters regarding the disputes, the court concludes that these do not constitute compliance with the contractual terms, as neither contracting officer purported to resolve the PHA's claims against the defendants.[3] Both letters were simply responses to correspondence: the "decision" regarding the first site was in answer to questions from Dore's surety; the "decision" regarding the second site was in answer to a letter from Mr. Dore. In neither case was this letter described as a "decision" within the meaning of the contract, and, at least with respect to the first site, Dore was not even copied on the letter. *See* Plf. Ex. O. There is nothing in the letters to indicate that they intended to resolve the matters such that Dore's obligation to select internal appeal, arbitration, mediation or litigation was implicated. Rather, these letters appeared to be additional correspondence in the vein of numerous previous letters. Even acknowledging that the contract does not seem to require a high degree of formali-

---

**2.** The PHA also includes a subsequent letter from Mr. Novack dated August 20, 1997, requesting a response from Mr. Pavlic, *see id.* Ex. P, and a responsive letter from Mr. Pavlic, dated September 5, 1997, stating that Star Insurance Company never received the June 4, 1997, letter. *See id.* Ex. Q; *see also id.*

Ex. R (October 1, 1997, letter from Mr. Novack resubmitting letter of June 4).

**3.** In light of this conclusion, it is unnecessary to address the defendant's claim that it did not receive all of described correspondence.

ty, these letters cannot be construed as "written decisions." [4]

■ The appropriate response to this failure to comply with the contractual terms is to grant summary judgment in favor of the defendant. *See, e.g., J & L Assoc., Inc. v. PHA*, Civ. A. No. 92–4634, 1993 WL 349438, at *3–4 (E.D.Pa. Sept.10, 1993) (holding that failure to comply with similar disputes provision requiring contract claims to be submitted to contracting officer warranted summary judgment); *see also United States v. Blair*, 321 U.S. 730, 734–35, 64 S.Ct. 820, 88 L.Ed. 1039 (1944) (holding that parties could not choose to disregard similar provisions, "accumulate large damages and then sue for recovery"; noting that similar administrative procedures were designed to "adjudicate disputes and to avoid large damage claims"). Such provisions requiring administrative procedures are not uncommon, and, in general, the courts have required compliance with similar terms. *See, e.g., United States v. Anthony Grace & Sons*, 384 U.S. 424, 429–30, 86 S.Ct. 1539, 16 L.Ed.2d 662 (1966) (requiring aggrieved contractor to comply with administrative process to which it had agreed in contract with the government); *United States v. Birmingham Fire Ins. Co.*, 370 F.Supp. 501, 503 (W.D.Pa.1974) (stating in suit between contractor and United States that administrative procedure established by contract was equally binding on the government and the contractor).[5]

*Conclusion*

The plain language of the contract requires that the disputes at issue here be submitted to the contracting officer and permits Dore to exercise the option of taking the matter to court, proceeding with arbitration or mediation, or appealing the contracting officer's decision through internal procedures. The PHA's contracting officer did not issue a decision in a way that permitted Dore to exercise any such option. This matter will be stayed pending compliance with contractual terms.

An appropriate order follows.

### ORDER

**AND NOW**, this 2nd day of September, 2000, upon consideration of defendant Dore & Associates Contracting, Inc.'s Motion for Summary Judgment, and the re-

---

4. In so holding, the court applies Pennsylvania's rules of contractual interpretation, which look primarily to the contract's plain language to determine the parties' intent. *See Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 613 (3d Cir.1995); *see also Hullett v. Towers, Perrin, Forster & Crosby, Inc.*, 38 F.3d 107, 111 (3d Cir.1994) (noting that "Pennsylvania courts apply the 'plain meaning rule' of interpretation," which focuses on the contractual language and only rarely considers extrinsic evidence). The court applies Pennsylvania law because the parties allege diversity jurisdiction, *see* Compl. ¶ 4; Answer ¶ 4, and because this action raises essentially local questions of contract interpretation, even though some of the contract language came from form HUD documents. *See Linan–Faye Const. Co. v. Housing Auth. of Camden*, 49 F.3d 915, 919–21 (3d Cir.1995); *Virgin Islands Housing Auth. v. Coastal Gen. Const. Serv. Corp.*, 27 F.3d 911, 917–18 (3d Cir.1994).

Moreover, although Dore suggests that arbitration law is relevant in resolving this motion for summary judgment, application of either federal or Pennsylvania arbitration law to the Disputes Provision itself is premature. While Dore has stated its intention to submit this case to arbitration, its right to exercise such an option assumes that its interpretation of the Disputes Provision controls, a predicate question to be decided under Pennsylvania law. Therefore, assuming that Dore ultimately chooses to seek arbitration, the court makes no comment whether Pennsylvania or federal arbitration law would govern. *See H.L. Libby Corp. v. Skelly and Loy, Inc.*, 910 F.Supp. 195, 197–98 (M.D.Pa.1995) (noting differences in federal and state arbitration law).

5. The court acknowledges that most cases addressing these issues discuss federal law pertaining to the jurisdiction of the Federal Court of Claims and the statutory framework for resolving contractual disputes between private contractors and the United States. Nonetheless, the analysis of those cases has application to the issues here, given the similarity of the contract provisions.

sponse thereto, it is hereby **ORDERED** that the Motion is **GRANTED.** This case shall be **STAYED** during its referral to the Contracting Officer as defined in the parties' contract, and claim resolution shall proceed in accordance with the dispute resolution provisions of the contract between the parties. *See* Def. Ex. A ¶ 31.