# United States Court of Appeals for the Federal Circuit

---

**SUFI NETWORK SERVICES, INC.,**
*Plaintiff-Cross-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellant*

---

2014-5032, 2014-5033

---

Appeals from the United States Court of Federal Claims in No. 1:11-cv-00453-TCW, Judge Thomas C. Wheeler.

---

Decided: April 24, 2015

---

BRIAN TULLY MCLAUGHLIN, Crowell & Moring, LLP, Washington, DC, argued for plaintiff-cross-appellant. Also represented by FREDERICK W. CLAYBROOK, JR.

DOUGLAS T. HOFFMAN, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellant. Also represented by STUART F. DELERY, ROBERT E. KIRSCHMAN, JR., STEVEN J. GILLINGHAM.

---

Before LOURIE, REYNA, and TARANTO, *Circuit Judges.*

REYNA, *Circuit Judge.*

The Air Force Nonappropriated Funds Purchasing Office ("Air Force") materially breached a contract with SUFI Network Services, Inc. ("SUFI"). SUFI submitted claims to the Air Force contracting officer and appealed denied claims to the Armed Services Board of Contract Appeals ("Board"). SUFI succeeded on several of its claims and subsequently submitted a claim for attorney fees to the contracting officer. The contracting officer did not respond to SUFI's attorney fees claim for more than six months. As a result, SUFI bypassed the Board and sued in the Court of Federal Claims. The trial court awarded attorney fees with interest but denied SUFI's request for overhead and lost profit. The government challenges the trial court's award on the basis that the trial court lacked jurisdiction. SUFI cross-appeals for overhead and lost profit. For the reasons that follow, we affirm in part, vacate in part, and remand.

BACKGROUND

In 1996, SUFI contracted with the Air Force to install and operate telephone systems in lodging facilities on Air Force bases in Germany.[1] SUFI furnished the necessary supplies, including cabling, wiring, telephone equipment, and other materials, at no cost to the Air Force. In exchange, the Air Force agreed that guests would make long distance calls exclusively through SUFI's network.

Shortly after the parties entered into the contract, the Air Force broke its promise of exclusivity. Dispute first arose when the Air Force refused to disable free communal phones that guests were using to avoid SUFI's long-

---

[1] *SUFI Network Servs., Inc. v. United States*, 755 F.3d 1305, 1309–11 (Fed. Cir. 2014) ("*SUFI I*") contains a full description of the facts giving rise to this dispute. We include only facts necessary for this opinion.

distance charges. The dispute intensified when the Air Force ordered SUFI to allow guests to access SUFI's network by using calling cards from competing long distance service providers. SUFI initiated administrative proceedings at the Board, alleging that the Air Force materially breached the contract.

In 2004, the Board found that the Air Force was in material breach and that SUFI was entitled to cancel the contract. SUFI cancelled the contract, and the parties entered into a Partial Settlement Agreement in 2005. The parties agreed that the Air Force would pay SUFI $1.2 million for its network and $1.075 million for good will. The parties also agreed that SUFI reserved the right to pursue additional monetary claims arising from the Air Force's material breach. Should SUFI succeed on additional claims, the Air Force agreed to pay SUFI interest from the date the Air Force received the claim, or the date SUFI "actually incurred" damages, whichever date is earlier. J.A. 1980. Thereafter, SUFI submitted claims to the contracting officer pursuant to the contract's disputes clause.

The disputes clause requires that the contracting officer decide "any dispute or claim concerning [the] contract." *Id.* at 748. The contracting officer must resolve the dispute or claim and "state his decision in writing." *Id.* Once the contracting officer's decision is received, any appeal to the Board must be made within 90 days. *Id.* If no appeal is made, the contracting officer's decision is final. *Id.*

SUFI submitted 28 claims, totaling over $131 million. *SUFI Network Servs., Inc.*, ASBCA No. 55306, 09–1 BCA ¶ 34,018 at 168,217 (Nov. 21, 2008). The contracting officer failed to issue a decision for more than six months, and SUFI appealed to the Board. *Id.* The Board docketed SUFI's appeal as a "deemed denial," *id.*, but before it decided SUFI's claims, the contracting officer issued a

final decision denying all of SUFI's claims except one. *Id.* at 168,219 ¶ 9. Thereafter, the Board found in SUFI's favor on 22 of the 28 claims.[2]

SUFI requested that the Board award expenses incurred in connection with preparing and submitting the claims to the contracting officer. The Board awarded SUFI certain claim preparation and non-legal consultant expenses. *Id.* at 168,289–91. SUFI's brief to the Board also discussed attorney fees incurred in connection with its successful claim preparation efforts. *Id.* at 168,289. At the time, however, SUFI was unable to identify a specific amount of attorney fees because SUFI and its attorneys had agreed to a contingency fee arrangement sometime in 2004. As a result, the Board declined to decide whether SUFI was entitled to attorney fees. *Id.*

On December 29, 2010, SUFI submitted to the contracting officer a formal claim for attorney fees and requested a decision within 60 days. More than six months passed without a decision by the contracting officer. On July 7, 2011, after numerous inquiries from SUFI about the status of the claim, Air Force counsel informed SUFI that SUFI could consider its claim "deemed denied."

The next day, SUFI sued the Air Force in the trial court, seeking attorney fees and expenses incurred as part of its successful claim preparation efforts, along with interest on those fees and expenses. The government moved to dismiss, arguing that because SUFI did not appeal to the Board, SUFI failed to exhaust the contractual remedy required by the disputes clause. The trial court denied the motion, concluding that SUFI was ex-

---

[2] SUFI sought review of the amount awarded by the Board in the trial court. Although SUFI prevailed before the trial court, we recently vacated much of that decision. *See SUFI I*, 755 F.3d at 1323–24.

cused from performance under the disputes clause because the contracting officer's delay rendered the contractual remedy inadequate and unavailable and constituted material breach of the disputes clause. *SUFI Network Servs., Inc. v. United States*, 102 Fed. Cl. 656, 661–62 (2012) ("*SUFI CFC I*"). The trial court then granted summary judgment in SUFI's favor on the issue of liability for attorney fees and expenses. *SUFI Network Servs., Inc. v. United States*, 105 Fed. Cl. 184, 192–195 (2012) ("*SUFI CFC II*"). The case proceeded to trial on the question of fees and liability for interest.

After trial, the court determined the proper amount of damages and interest. First, the trial court determined that SUFI's attorney fee calculations were reasonable and awarded $697,702.50 in fees and $25,486.81 in expenses. *SUFI Network Servs., Inc. v. United States*, 113 Fed. Cl. 140, 147–48 (2013) ("*SUFI CFC III*"). Second, the trial court held that under the Partial Settlement Agreement, SUFI was entitled to interest on attorney fees and expenses starting from the date SUFI's attorneys began the claim preparation work. *Id.* at 148. The court determined that SUFI was not entitled to overhead and lost profit incurred in connection with its claim preparation efforts. *Id.* at 149. The government appealed, and SUFI cross-appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## DISCUSSION

We review the trial court's legal conclusions de novo and its factual findings for clear error. *Ind. Mich. Power Co. v. United States*, 422 F.3d 1369, 1373 (Fed. Cir. 2005). Contract interpretation and interpretation of a settlement agreement are questions of law that we review de novo. *Augustine Med., Inc. v. Progressive Dynamics, Inc.*, 194 F.3d 1367, 1370 (Fed. Cir. 1999).

An initial question concerns the trial court's jurisdiction, given that SUFI bypassed the Board and brought

suit directly in the trial court. This question depends in part on whether this dispute is governed by the Contract Disputes Act (CDA). The parties agree that it is not. Accordingly, this case falls within the trial court's Tucker Act jurisdiction. *See Slattery v. United States*, 635 F.3d 1298, 1321 (Fed. Cir. 2011) (en banc) ("[T]he jurisdictional foundation of the Tucker Act is not limited by the appropriation status of the agency's funds or the source of funds by which any judgment may be paid."). We apply the common law to this dispute, and not the CDA.

## I.    Exhaustion

The trial court excused SUFI from exhausting the contractual remedy under the disputes clause based on two theories. *SUFI CFC I*, 102 Fed. Cl. at 661–62. First, the contracting officer's failure to issue a final decision within a reasonable time rendered the contractual remedy inadequate and unavailable. *Id.* Second, the contracting officer materially breached the disputes clause, which excused SUFI from further performance under the clause. *Id.* at 662.

According to the government, the trial court incorrectly presumed that SUFI lacked adequate recourse absent a final decision by the contracting officer. The government contends SUFI could have appealed directly to the Board under Board rules promulgated as part of the Federal Acquisition Regulation (FAR) System.[3] The government highlights that SUFI had already used this recourse when it appealed to the Board without first receiving the contracting officer's decision on SUFI's original breach claims.

SUFI responds that precedent supports the trial court's conclusion. SUFI argues that our predecessor

---

[3]    Federal Acquisition Regulations are codified in Title 48 of the Code of Federal Regulations.

court has held that a contracting officer's delay or refusal to render a timely decision excuses a party from exhausting its contractual remedy. *See, e.g.*, *N.Y. Shipbuilding Corp. v. United States*, 385 F.2d 427, 435 (Ct. Cl. 1967); *Oliver-Finnie Co. v. United States*, 279 F.2d 498, 503 (Ct. Cl. 1960); *Se. Oil Fla., Inc. v. United States*, 115 F. Supp. 198, 201 (Ct. Cl. 1953). SUFI also argues this Court's precedent is consistent with our predecessor's. *See, e.g.*, *New Valley Corp. v. United States*, 119 F.3d 1576, 1581–82 (Fed. Cir. 1997) (finding contractor exhausted disputes clause by attempting, unsuccessfully, to obtain a timely decision from a contracting officer).

We affirm the trial court and hold that the contracting officer's delay rendered the contractual remedy inadequate and unavailable.[4] A contractual remedy is a government contractor's exclusive remedy unless there is "some clear evidence that the appeal procedure is inadequate or unavailable." *United States v. Joseph A. Holpuch Co.*, 328 U.S. 234, 240 (1946). If a contractor ignores a contractual remedy altogether, the contractor's failure to exhaust the remedy will not be excused. *United States v. Anthony Grace & Sons, Inc.*, 384 U.S. 424, 427 (1966); *Joseph A. Holpuch*, 328 U.S. at 239; *United States v. Blair*, 321 U.S. 730, 735 (1944). When a contracting officer "so clearly reveals an unwillingness to act," however, a contractual remedy may become inadequate or unavailable. *Anthony Grace & Sons*, 384 U.S. at 430.

In this case, the contracting officer's unwillingness to render a decision for more than six months denied SUFI access to the Board, rendering SUFI's contractual remedy

---

[4] The parties agree that the disputes clause survived the government's original material breach. *See* Appellant's Br. 9 (arguing that SUFI was required to comply with disputes clause); Cross-Appellant's Br. 13 (arguing that disputes clause applies to breaches).

inadequate and unavailable. This was affirmed by Air Force counsel's advice that SUFI could consider the attorney fees claim deemed denied. By its terms, the disputes clause does not provide a way in which SUFI can reach the Board without first obtaining a decision from the contracting officer. *See* J.A. 748. SUFI may appeal to the Board only after receipt of the contracting officer's "decision in writing." *Id.* The contracting officer's failure to issue a written decision prevented SUFI from obtaining a Board decision, hence, the contracting officer prevented SUFI from accessing the courts. *See N.Y. Shipbuilding*, 385 F.2d at 437 ("No proper initial decision has been rendered administratively, there is nothing from which to appeal, and there is nothing for the appeal board to consider.").

The fact that the government eventually informed SUFI that it could deem its claim denied does not change our analysis, even if we were to determine that the government's deemed denial constituted a written decision by the contracting officer. By the time the government sent SUFI the deemed denial notice, the contractual remedy had been rendered inadequate and unavailable, giving SUFI the option to sue in the trial court. The trial court did not err in deciding that the contracting officer's delay rendered the contractual remedy inadequate and unavailable. Nor does the Board's discretionary authority under 48 C.F.R. Ch. 2 App. A to review an appeal where the contracting officer fails to issue a decision in "a reasonable time" relieve the government of its independent obligation to timely respond to SUFI's claim.

## II.    Attorney Fees

SUFI's contract incorporates by reference two of the FAR's standard changes clauses: a supplies changes clause and a services changes clause. If the contract is for supplies, the contracting officer may make an equitable adjustment for changes in "[d]rawings, designs, or specifi-

cations," methods of "shipment or packing," and "[p]lace of delivery." FAR § 52.243–1. If the contract is for services and if "no supplies are to be furnished," a contracting officer may make an equitable adjustment for changes in the "[d]escription of services to be performed," the "[t]ime of performance," and the "[p]lace of performance." FAR § 52.243–1 *Alternate I*.

The trial court concluded that SUFI's attorney fees, incurred in negotiating its breach claims with the contracting officer, are recoverable under the contract's changes clause and are allowed by the FAR as contract administration costs. *SUFI CFC II*, 105 Fed. Cl. at 192–95 (citing *Bill Strong Enters., Inc. v. Shannon*, 49 F.3d 1541, 1549–50 (Fed. Cir. 1995)). Recognizing that the FAR does not apply to nonappropriated funds contracts, *see* FAR §§ 1.104, 2.101, the trial court grounded its conclusion in common law, finding that SUFI's attorney fees are recoverable as a foreseeable consequence of the government's breach. *SUFI CFC II*, 105 Fed. Cl. at 195.

The government interprets the trial court's holding as awarding attorney fees only under the changes clause. According to the government, attorney fees are not recoverable under the changes clause because neither the supplies changes clause nor the services changes clause would permit the contracting officer to make an equitable adjustment to account for attorney fees incurred as part of SUFI's claim preparation efforts. The government, however, fails to address whether attorney fees are recoverable under the common law.

SUFI argues that attorney fees are recoverable under the services changes clause because the government's breach triggered SUFI's negotiations with the contracting officer. SUFI contends those negotiations qualify as a change in "services to be performed" under the services changes clause. Alternatively, SUFI argues that attorney fees were foreseeable under the common law because the

disputes clause required SUFI to resolve breach claims by negotiating with the contracting officer.

We affirm the trial court's ruling that SUFI is entitled to attorney fees under common law. Under common law, damages for breach of contract are awarded to place the wronged party in the position it would have been in had the contract been fully performed. *Mass. Bay Transp. Auth. v. United States*, 129 F.3d 1226, 1232 (Fed. Cir. 1997) ("*MTBA*"). The government does not dispute that pre-litigation attorney fees under a claim-preparation provision like the one here can be compensable under common law principles.

The government argues that the trial court's award should be vacated because the trial court erred in mixing two distinct theories of recovery, the changes clause and the FAR, and common law. We disagree. Although the trial court addressed the changes clause, it clarified that the attorney fees award was based on common law. *See SUFI CFC III*, 113 Fed. Cl. at 145 (explaining that attorney fees were a "direct and foreseeable result" of the government's breach). The government failed to attack the trial court's award of attorney fees on the basis of common law. Thus, we affirm the trial court's award of attorney fees.

### III.  Interest

The trial court also awarded interest on attorney fees from the date SUFI's attorneys undertook the claim preparation work. *Id.* at 148. Under the Partial Settlement Agreement, the Air Force agreed to pay SUFI interest on any amount recovered by a judgment "from the earlier of (i) the date of receipt of the claim, or (ii) the date damages are actually incurred, until payment." J.A. 1980. The trial court determined that fees are incurred "either when they are paid or when there is an 'express or implied agreement that the fee award will be paid over to the legal representative.'" *SUFI CFC III*, 113 F. Cl. at 148

(internal quotation mark omitted) (quoting *United Partition Sys., Inc. v. United States*, 95 Fed. Cl. 42, 53 (2010) (quoting *Phillips v. Gen. Servs. Admin.*, 924 F.2d 1577, 1583 (Fed. Cir. 1991) (per curiam))).

The government argues that SUFI's contingency fee arrangement means that attorney fees were not "actually incurred" on the date the attorneys did the work because there was no obligation to pay the attorneys on that date. Thus, the government contends that the earliest date of interest accrual would be December 29, 2010, the date SUFI submitted its claim for fees and expenses to the contracting officer. The government also argues that the cases relied on by the trial court are limited to attorney fees under the Equal Access to Justice Act (EAJA). We cannot rely, the government insists, on interpretation of statutory language that is unrelated to the Partial Settlement Agreement.

SUFI counters that SUFI incurred an obligation to pay attorney fees at the moment the attorneys worked on SUFI's matter. SUFI also relies, as the trial court did, on cases interpreting the word "incurred" in the EAJA and other fee shifting statutes.

We agree with the government that SUFI did not "actually incur" attorney fees on the date SUFI's attorneys did the work. Contract interpretation starts with the language of the contract. *Coast Fed. Bank, FSB v. United States*, 323 F.3d 1035, 1038 (Fed. Cir. 2003). Terms must be given their plain meaning if the language of the contract is clear and unambiguous. *Id.* The word "incur" means to suffer "a liability or expense." *See Black's Law Dictionary* 771 (7th ed. 1999). Because the contract was between SUFI and the Air Force, SUFI, and not SUFI's attorneys, must have "actually incurred" attorney fees on the date SUFI's attorneys did the work. SUFI admits that it received no legal bills after the contingency fee arrangement was put into place. SUFI's attorneys could not

have demanded payment from SUFI on the dates the work was done because the contingency, i.e., recovery from the government, had not yet occurred. Thus, SUFI suffered no liability or cost when SUFI's attorneys did the work.

The case law relied on by the trial court is not persuasive. Those cases involve only whether attorney fees can be incurred under the EAJA, not *when* they are incurred. *See United Partition Sys., Inc. v. United States*, 95 Fed. Cl. 42, 53 (2010); *Phillips v. Gen. Servs. Admin.*, 924 F.2d 1577, 1583 (Fed. Cir. 1991) (per curiam).

SUFI argues that the attorney fees award is not based on fees actually incurred after the contingency. Rather, the award is based on a lodestar calculation involving hours worked, making the date those hours were worked relevant. We disagree. The lodestar analysis only determines the amount of attorney fees sought. Had SUFI lost its case, no attorney fees would have been owed to the attorneys, even though the attorneys performed the work. In either case, it cannot be said that SUFI bore the financial cost of interest as it was never deprived of the use of monies paid to the lawyers; there were no such payments. *See, e.g., LMI-La Metalli Industriale, S.p.A. v. United States*, 912 F.2d 455, 460–61 (Fed. Cir. 1990) ("The time value of money is not an arbitrary fiction, but must correspond to a dollar figure reasonably calculated to account for such value during the  gap period between delivery and  payment."). We therefore vacate the trial court's award of interest and remand with instructions that the trial court calculate interest consistent with this opinion.

## IV.  Standard Rates

The trial court calculated attorney fees based on SUFI's attorneys' standard rates that were in place when SUFI's attorneys did the claim preparation work. *SUFI CFC III*, 113 Fed. Cl. at 145–47. The trial court concluded that SUFI's attorneys' standard rates were reasonable on

the basis of (i) testimony as to rates typically charged by SUFI's attorneys during the relevant time period, (ii) an expert report that compared SUFI's attorneys' rates to rates charged by a leading law firm during the same time period, (iii) and evidence of market conditions that existed at the time. *Id.* at 147.

The government argues that the trial court should have based its fee award on the rates SUFI actually paid its attorneys before the contingency arrangement was in place, and not the standard rates. The government reasons that SUFI did not produce at trial its other fee agreement that was in place prior to the contingency fee agreement. As a result, the government argues that SUFI did not meet its burden of proving that the standard rates were reasonable. SUFI responds that the evidence supports the trial court's conclusion because the government failed to challenge the standard rate evidence at trial or on appeal.

We find no clear error in the trial court's award of fees based on SUFI's attorneys' standard rates. The trial court calculated SUFI's attorney fees award using the lodestar method, which involves multiplying the number of hours by an hourly rate. *See, e.g.*, *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 546 (2010). Both the number of hours and the hourly rate must be reasonable, and a party seeking a fee award has the burden of proving reasonableness. *Blum v. Stenson*, 465 U.S. 886, 897 (1984). An hourly rate is reasonable if it is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.* at 896 n.11. The trial court heard evidence suggesting that SUFI's attorneys' standard rates were reasonable and in line with those prevailing in the community.

The government cites no authority that a party cannot prove the reasonableness of its standard rates when

there is evidence the party paid a different rate at an earlier, unrelated time. In addition, the government introduced testimony suggesting that the prior rates were similar to the standard rates used by the trial court to calculate the attorney fees award. We affirm the trial court's attorney fees calculation.

## V.    SUFI's Cross-Appeal

The trial court denied SUFI's request for overhead costs and lost profits it incurred pursuing its claim for attorney fees on the grounds that the FAR provides that the government "will not pay excessive pass-through charges," FAR § 52.215-23(b), which are generally defined as a contractor's "indirect costs or profit" resulting from work performed by a subcontractor with "negligible value" added by the contractor, *id.* § 52.215-23(a). *SUFI CFC III*, 113 Fed. Cl. at 148–49. The trial court determined that SUFI added negligible value to the claim preparation work done by SUFI's attorneys, hence, SUFI's overhead and profit constituted excessive pass-through charges. *SUFI CFC III*, 113 Fed. Cl. at 149.

SUFI argues that the trial court erred in applying the FAR because the FAR does not apply. SUFI contends that under applicable common law, overhead and lost profit are recoverable. The government responds that SUFI's overhead costs and lost profits are unreasonable damages and thus unrecoverable under common law for the same reason that excessive pass-through charges are not allowed under the FAR.

We agree with SUFI that the trial court erred in applying the FAR. The FAR does not apply to SUFI's non-appropriated funds contract. *See* FAR §§ 1.104, 2.101.

Under applicable common law, damages for breach of contract should place the wronged party in as good a position as it would have been had the breaching party fully performed. *MTBA*, 129 F.3d at 1232–33. If a party

shows that work was done solely because of a breach, that party is entitled to prove the cost of that work, including "both direct and indirect costs." *Energy Nw. v. United States*, 641 F.3d 1300, 1309 (Fed. Cir. 2011).

Contrary to the government's contention, the common law and the FAR are not synonymous in this instance. The common law, unlike the FAR, does not require the party seeking overhead and profit to prove that it added more than negligible value to the work. *See Energy Nw.*, 641 F.3d at 1309. Nor would the parties have contemplated that FAR § 52.215-23 would limit overhead and profit recovery. The parties entered the contract in 1996. Legislation prohibiting excessive pass-through charges was not passed until 2007. John Warner National Defense Authorization Act for Fiscal Year 2007, Pub. L. No. 109-364, § 852(b) (codified at 10 U.S.C. § 2324 note). The final version of FAR § 53.215-23 did not issue until December 2010. *See* 75 Fed. Reg. 77,745 (Dec. 13, 2010). Thus, we vacate the trial court's denial of overhead and profit and remand with instructions that the trial court apply law consistent with this opinion.

CONCLUSION

For these reasons, we affirm-in-part, vacate-in-part, and remand.

**AFFIRMED IN PART, VACATED IN PART, and REMANDED**

COSTS

No costs.