NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**SAUDER MANUFACTURING COMPANY,**
*Plaintiff-Appellant*

**v.**

**J SQUARED, INC., DBA UNIVERSITY LOFT COMPANY,**
*Defendant-Cross-Appellant*

_____

2019-1430, 2019-1479

_____

Appeals from the United States District Court for the Northern District of Ohio in No. 3:14-cv-00962-JZ, Judge Jack Zouhary.

_____

Decided: January 28, 2020

_____

MICHAEL M. JACOB, Young Basile Hanlon & MacFarlane P.C., Troy, MI, argued for plaintiff-appellant. Also represented by EDDIE D. WOODWORTH, THOMAS YOUNG.

THOMAS R. DEVOE, Taft, Stettinius & Hollister, LLP, Indianapolis, IN, argued for defendant-cross-appellant. Also represented by MELISSA A. MACCHIA.

_____

Before DYK, WALLACH, and STOLL, *Circuit Judges*.

STOLL, *Circuit Judge*.

This appeal arises from a dispute following the settlement of a patent infringement action brought by Sauder Manufacturing Company against J Squared, Inc., doing business as University Loft Company (hereinafter, "ULC"). Sauder filed a petition alleging that ULC had failed to comply with the terms of the parties' settlement agreement and accompanying permanent injunction. The district court ultimately rejected all of the claims in Sauder's petition, declining to grant any relief to Sauder. Pursuant to terms of the settlement agreement, ULC moved to recover the attorney fees and costs it incurred in the post-settlement dispute, but the district court denied that relief too.

Sauder appeals the district court's order determining that ULC complied with the terms of the settlement agreement and permanent injunction. Because we discern no reversible error in the district court's determinations regarding ULC's compliance, we affirm the district court's order on that ground. ULC cross-appeals the district court's order denying an award of attorney fees and costs. Because we conclude that ULC is the prevailing party in this action, we reverse the district court's prevailing party determination and remand for a determination of the amount of attorney fees and costs to be awarded to ULC under the terms of the settlement agreement.

## BACKGROUND

In May 2014, Sauder sued ULC, alleging that ULC's WAVE chairs infringed several of Sauder's patents. The patents at issue[1] are generally directed to a "game chair"—

---

[1]    Sauder asserted U.S. Patent Nos. D585,204, 8,585,136, and 8,960,787 in the patent infringement suit. Two of Sauder's related patents, U.S. Patent

a convertible desk chair that can be decoupled into a floor rocker and a base table.  Sauder and ULC negotiated a settlement in August 2017, and the parties executed a settlement agreement the following month.  The district court entered a permanent injunction as specified in the settlement agreement.  The district court dismissed the case with prejudice, retaining jurisdiction over the parties for the ongoing enforcement of the injunction and settlement agreement.

I

The settlement agreement requires ULC to cease the promotion and sale of its allegedly infringing chairs.  The injunction also separately enjoins ULC from selling the allegedly infringing chairs and any products that infringe the patents at issue.  The settlement agreement does, however, specify a permissible way for ULC to modify and sell its existing inventory of WAVE chairs.  The authorized modification is called the FRED chair, and entails sawing off the curved rails that enable the decoupled chair to rock on the floor, leaving behind four stubby feet.

The settlement agreement specifies that it "shall be governed by and construed in accordance with the laws of the State of Ohio," J.A. 384 ¶ 15(a), and that it "supersedes any and all prior or contemporaneous negotiations, representations, agreements and understandings, written or oral, that the Parties may have reached with respect to the subject matter hereof," J.A. 385–86 ¶ 15(g).  It provides a 150-day compliance period applicable to some provisions, and a 7-day cure period for all alleged breaches.  The "prevailing party" in any dispute arising under the settlement agreement is "entitled to recover reasonable attorney's fees

---

Nos. 9,370,249 and 9,668,583, are also within the scope of the settlement agreement and permanent injunction at issue.

and costs incurred in connection therewith."   J.A. 385 ¶ 15(b).

## II

The peace brought by the settlement agreement did not last long.  In March 2018, Sauder returned to the district court to allege that ULC had failed to comply with the settlement agreement and permanent injunction.  A discovery period followed, in which the district court denied Sauder's request for third-party discovery from ULC's customers but ordered additional discovery from ULC instead.  Following discovery, Sauder petitioned the district court to find ULC in breach of the settlement agreement and in violation of the permanent injunction.

In its petition, Sauder complained that ULC had breached the agreement and violated the injunction by declining to convert its existing inventory of WAVE chairs into the specified FRED chair.  ULC had instead inserted pins to connect the floor rocker and base table components together so that they may not be easily detached, and sold the resulting product as a non-convertible "pinned chair."  Sauder also complained that ULC's removal of the WAVE chair from its website and other promotional materials was not sufficiently speedy or comprehensive to satisfy ULC's obligations under the settlement agreement.

The district court rejected all of Sauder's claims and denied any relief to Sauder.  In particular, the district court found that "ULC made a reasonable disposition of its remaining inventory by modifying that inventory to prevent the easy conversion of the chair from fixed to rocker."  J.A. 14.  While the district court acknowledged that "the modification undertaken by ULC was not specifically discussed during settlement," the settlement agreement "did not prohibit ULC from disposing of inventory in other non-infringing ways," and the alternative modification "accomplished the same purpose intended by the [a]greement."  *Id.*  With regard to the removal of the allegedly infringing

chairs from the website and promotional materials, the district court found that ULC made a "good faith effort" and "took reasonable steps" to comply with its obligations under the settlement agreement. J.A. 13. There was no harm to Sauder, furthermore, because there were no shipments of the allegedly infringing chairs, and therefore no sales lost by Sauder.

Both parties sought to recover attorney fees and costs for the post-settlement dispute, as contemplated by the terms of the settlement agreement. The district court denied both requests. The district court reasoned that "both sides have proceeded in good faith, and both have 'prevailed' in the sense that this litigation is concluded." J.A. 15. The district court also noted that the post-settlement dispute potentially could have been avoided "if ULC had initiated conversations with Sauder or this Court *before* selling" the pinned chairs. *Id.*

Sauder appeals the district court's denial of relief and additional discovery. ULC cross-appeals the district court's denial of an award of attorney fees and costs. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

DISCUSSION

I

We first address Sauder's appeal. Among other arguments, Sauder insists that the district court erred when it declined to hold that ULC breached the settlement agreement and violated the injunction by making and selling the pinned chairs. For the reasons that follow, we disagree and affirm the district court's ruling.

The interpretation of contracts, including settlement agreements, is a question of law that we review de novo. *SUFI Network Servs., Inc. v. United States*, 785 F.3d 585, 590 (Fed. Cir. 2015) (citing *Augustine Med., Inc. v. Progressive Dynamics, Inc.*, 194 F.3d 1367, 1370 (Fed. Cir. 1999)). We review the district court's underlying findings of fact

for clear error. *Id.* at 589–90 (citing *Ind. Mich. Power Co. v. United States*, 422 F.3d 1369, 1373 (Fed. Cir. 2005)). Our interpretation of the settlement agreement is governed by Ohio law. J.A. 384 ¶ 15(a). Under Ohio law, the purpose of contract construction is "to ascertain and give effect to the intent of the parties." *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.*, 678 N.E.2d 519, 526 (Ohio 1997) (citing *Aultman Hosp. Ass'n v. Cmty. Mut. Ins. Co.*, 544 N.E.2d 920, 923 (Ohio 1989)). "Where the terms of a contract are clear and unambiguous, [a] court cannot find a different intent from that expressed in the contract." *E.S. Preston Assocs., Inc. v. Preston*, 492 N.E.2d 441, 445 (Ohio 1986) (citing *Alexander v. Buckeye Pipe Line Co.*, 374 N.E.2d 146, 150 (Ohio 1978)).

On appeal, Sauder asserts that ULC breached the settlement agreement by making and selling the pinned chairs. Sauder essentially contends that the FRED modification is the only allowable option under the settlement agreement, and all other modifications to the WAVE chairs in inventory constitute a breach of the settlement agreement. *See* Appellant's Br. 23 ("The FRED chair was the only authorized modification of ULC's unsold inventory." (emphases omitted)); *see also* Oral Arg. at 2:05–2:29, *available at* http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2019-1430.mp3 (similar).

We agree that the settlement agreement contemplates that ULC will modify its existing inventory of WAVE chairs by converting them into FRED chairs. But Sauder's interpretation that ULC *must* perform this conversion is contradicted by the plain language of the agreement:

> *Sauder shall not assert* any patent infringement claims against ULC based upon the manufacture and sale of the four-legged convertible chair designed and illustrated by ULC in the attached Exhibit C (the "FRED" chair); provided, however, that

this non assertion provision shall apply only to the FRED chair in a form substantially identical to that illustrated in Exhibit C, and shall not apply to any modification thereof which includes, by way of example, and not by limitation, a rail or strut between the lower ends of the front and rear legs of such chair, whether or not such rail is curved to provide a rocker function.

Subject to the provisions of paragraph 7 hereof, *ULC shall be permitted* to modify and sell the approximately 900 existing units of the version 2.0 and/or 2.1 WAVE and/or VECTOR brand chairs in its inventory into the FRED chair. Sauder will make no claim of infringement against ULC based on the offer for sale and/or sale of said chairs as modified according to the description contained in Exhibit C herein.

J.A. 380–81 ¶¶ 7, 8 (emphases added) (headings omitted).

These terms are a clear and unambiguous promise *from* Sauder *to* ULC not to sue for patent infringement *if* ULC applies a certain modification to its existing inventory of WAVE chairs. ULC is expressly *permitted* to convert its inventory to the FRED chair, but is not *required* to do so. ULC may take a different approach at its own risk, such as inserting pins into the release mechanism so that the chairs are no longer convertible. And just as ULC is not required to modify its inventory in the way specified in the agreement, Sauder is not precluded from suing if it believes that ULC's selected modification is infringing. Notably, ULC maintains that the pinned chairs are non-infringing, and Sauder has not alleged that the pinned chairs infringe its patents except to the extent that the pins are easily removed. The district court, however, found that the pins "prevent the easy conversion of the chair from fixed to rocker" and that ULC was not prohibited from disposing of its inventory in "other non-infringing ways," thus

suggesting that the pinned chairs are a non-infringing modification.  J.A. 14.  That finding is not clearly erroneous.

Sauder further argues that ULC's modifications are improper because the settlement discussions that gave rise to the settlement agreement focused on the presence of the rocker rails in the accused chairs—not their convertibility. But the settlement agreement includes an integration clause that plainly precludes consideration of any such parol evidence:

> This Agreement and its attached exhibits constitute the entire understanding and only agreement between the Parties with respect to the subject matter hereof and supersedes any and all prior or contemporaneous negotiations, representations, agreements and understandings, written or oral, that the Parties may have reached with respect to the subject matter hereof.

J.A. 385–86 ¶ 15(g).  Once again, Sauder asks us to depart from the clear and unambiguous language of the settlement agreement to impose additional obligations on ULC. We decline to do so.

We have considered the other arguments raised by Sauder—including that the district court erred by concluding that ULC complied with the settlement agreement provisions relating to promotional materials, denying Sauder's petition to hold ULC in contempt for violations of the permanent injunction, and denying Sauder's request for additional discovery from ULC's customers—but we discern no error in the district court's thorough analysis.  Accordingly, we affirm the district court's order holding that ULC complied with its obligations under the settlement agreement and permanent injunction.

II

We now turn to ULC's cross-appeal. ULC asserts that the district court erred by failing to perform a prevailing party analysis under Ohio law, as required by the settlement agreement. For the reasons that follow, we agree.

The interpretation of the meaning of "prevailing party" in the settlement agreement is governed by Ohio law. *See* J.A. 384 ¶ 15(a). Under Ohio law, "persons have a fundamental right to contract freely with the expectation that the terms of the contract will be enforced." *Nottingdale Homeowners' Ass'n, Inc. v. Darby*, 514 N.E.2d 702, 705 (Ohio 1987). "Where the terms in a contract are not ambiguous, courts are constrained to apply the plain language of the contract." *City of St. Marys v. Auglaize Cty. Bd. of Comm'rs*, 875 N.E.2d 561, 566 (Ohio 2007) (citing *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 652 N.E.2d 684 (Ohio 1995)). In particular, "[a]ttorney fees may be awarded when . . . an enforceable contract specifically provides for the losing party to pay the prevailing party's attorney fees," so long as that contract is entered into freely. *Wilborn v. Bank One Corp.*, 906 N.E.2d 396, 400 (Ohio 2009) (citing *Nottingdale*, 514 N.E.2d at 702).

The settlement agreement plainly and unambiguously requires an award of reasonable attorney fees and costs to the prevailing party in disputes arising under the agreement:

> ULC and Sauder agree to submit to the jurisdiction and venue in the Northern District of Ohio for any and all disputes that may arise under this Settlement Agreement and that *the prevailing party in any such dispute shall be entitled to recover reasonable attorney's fees and costs incurred in connection therewith*.

J.A. 385 ¶ 15(b) (emphasis added). Sauder does not argue that the settlement agreement is a contract of adhesion or

otherwise unenforceable. Accordingly, the district court was obligated to enforce this provision of the settlement agreement under Ohio law.

The only remaining question, then, is whether ULC is a prevailing party. Under Ohio law, the determination of a prevailing party is a question of law reviewed de novo. *Simbo Props., Inc. v. M8 Realty, L.L.C.*, No. 107161, 2019 WL 5491350, at \*7 (Ohio Ct. App. Oct. 24, 2019) (first citing *Thomas v. Cleveland*, 892 N.E.2d 454, 459–60 (Ohio Ct. App. 2008); then citing *Hustler Cincinnati, Inc. v. Elm 411, LLC*, No. C–130754, 2014 WL 7339031, at \*3 (Ohio Ct. App. Dec. 24, 2014)). Because the settlement agreement does not define "prevailing party," we look to Ohio law for guidance as to its meaning. Under Ohio law, "[a] party's status as the prevailing party 'does not depend upon the degree of success at different stages of the suit, but whether, at the end of the suit, or other proceeding, the party who had made a claim against the other, has successfully maintained it.'" *Hustler*, 2014 WL 7339031, at \*3 (quoting *Hikmet v. Turkoglu*, 2009 WL 4699101, No. 08AP–1021, at \*14 (Ohio Ct. App. Dec. 10, 2009)).

Applying this standard, we hold that ULC is the prevailing party in this action. Sauder advanced several post-settlement claims against ULC, but Sauder did not "successfully maintain" a single one. Sauder ultimately failed to obtain *any* relief from the district court based on its post-settlement petition. Indeed, counsel for Sauder conceded at oral argument that Sauder did not prevail on any issue in this action. *See* Oral Arg. at 35:06–35:35.

The recent *Simbo* decision from the Ohio appellate courts is instructive here. *See generally Simbo*, 2019 WL 5491350, at \*7–11. The *Simbo* court was confronted with a lease between two commercial entities that included a similar fee-shifting provision: "If a lawsuit is filed with respect to this Lease, the prevailing party shall be entitled to collect all reasonable attorney's fees and costs." *Id.* at \*8.

"Prevailing party" was not defined within the lease agreement. *Id.* Because the outcome of the litigation was mixed, the parties disputed who was the prevailing party under the terms of the lease. *Id.* at *7. To resolve the dispute, the *Simbo* court considered whether the "main issue" or "some relief" standard should apply to the lease agreement's fee-shifting provision under Ohio law. *See id.* at *8–10. The *Simbo* court held that the "main issue" standard applies in the situation "where two consenting, sophisticated parties, represented by counsel knowingly and willingly negotiated a commercial lease agreement." *Id.* at *11. The court reasoned that "[w]hile public policy in consumer protection and civil rights litigation supports a broader interpretation of 'prevailing party,' no similar need exists in negotiated commercial fee-shifting clauses between sophisticated parties." *Id.* at *10. After all, "[i]f the parties had desired to define 'prevailing party,' . . . [they] could have drafted that provision into the lease." *Id.* at *8.

This case similarly involves two sophisticated parties that freely negotiated an agreement and declined to define "prevailing party." They expressly chose Ohio law and negotiated the settlement agreement in the context of the same case law relied on by the *Simbo* court. Sauder initiated this post-settlement action and failed to obtain any relief. Because Sauder obtained nothing by virtue of this action, ULC is the prevailing party under Ohio law—regardless of whether the "main issue" or "some relief" standard applies to the fee-shifting provision.

The district court did not correctly apply Ohio law to analyze the prevailing party issue. Instead, it only observed that (1) both parties had "proceeded in good faith," (2) both parties had "'prevailed' in the sense that this litigation is concluded," and (3) the recent phase of post-settlement litigation could potentially have been avoided or curtailed if ULC had initiated conversations with Sauder

prior to selling the modified chairs.[2] J.A. 15. None of these considerations are relevant to the prevailing party analysis under Ohio law. Indeed, the district court's approach renders the fee-shifting provision a nullity, in that no matter how the case was resolved, both parties will always prevail because the "litigation is concluded." That violates ULC's "fundamental right to contract freely with the expectation that the terms of the contract will be enforced." *Nottingdale*, 514 N.E.2d at 705. Accordingly, we reverse the district court's prevailing party determination. We hold that ULC is the prevailing party and is therefore entitled under the settlement agreement to recover reasonable attorney fees and costs incurred in connection with this action.

CONCLUSION

For the foregoing reasons, we reverse the district court's prevailing party determination and remand for a determination of the amount of attorney fees and costs to award to ULC. We affirm the district court's orders in all other respects.

**AFFIRMED-IN-PART, REVERSED-IN-PART, AND REMANDED**

---

[2] To the extent the district court found that ULC failed to give pre-sale notice of its intent to modify the WAVE chairs, the district court clearly erred. On March 2, 2018, the same day that ULC first entered an agreement to sell the pinned chairs to a customer, ULC notified Sauder that it intended to "modify the chair into a non-convertible office chair that cannot detach or function as a separate gamer chair with table," which "falls well outside the scope of Sauder's patents." J.A. 1591; *see also* J.A. 1662 (purchase order for pinned chairs dated March 2, 2018, "[t]o be delivered Summer 2018"). In any event, this fact is irrelevant to the prevailing party analysis under Ohio law.

## COSTS

Costs to cross-appellant.